**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CRIMINAL ACTION NO. 17-43-DLB-CJS**

**UNITED STATES OF AMERICA**                                        **PLAINTIFF**

**v.**                          **REPORT AND RECOMMENDATION**

**DONALD R. CONWAY**                                                **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendant Donald R. Conway's Motion to Suppress. (R. 25). The Government has filed its Response, to which Defendant Conway filed a Reply, requesting an evidentiary hearing. (R. 27; R. 28).

The Court held an evidentiary hearing on the Motion to Suppress on May 4, 2018. (*See* R. 31). Defendant was present for the hearing and represented by appointed counsel Edward L. Metzger, III. The United States was represented by Assistant United States Attorney Anthony Bracke. Following the presentation of evidence, counsel offered brief argument to the Court and the hearing was closed. (R. 31). Counsel indicated that the parties did not wish to submit any further briefing, and the Motion was therefore submitted. (*Id.*). A transcript of the hearing having been filed (*see* R. 34), this matter is now ripe for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).[1] (*See* R. 3). For the reasons set forth below, it will be recommended that Defendant's Motion to Suppress (R. 25) be denied.

---

[1] *See United States v. Quinney*, 238 F. App'x 150 (6th Cir. 2007) (citing *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) (characterizing a motion to suppress as dispositive)).

## I.    BACKGROUND AND EVIDENTIARY HEARING

On November 9, 2017, a federal grand jury returned an Indictment against Defendant Donald R. Conway ("Conway" or "Defendant"), charging him with possession of a mixture or substance containing heroin, a Schedule I controlled substance, as well as a mixture or substance containing cocaine, a Schedule II controlled substance, with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Additionally, the Indictment charged Conway with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). (R. 1).

On March 29, 2018, Conway filed a Motion to Suppress, arguing that the December 28, 2016 warrantless stop and subsequent search of his person and vehicle by local law enforcement violated his constitutional rights. (R. 25). At the May 4, 2018 evidentiary hearing on Defendant's suppression motion, the United States called Officer Kyle Shepard, Officer Galvin Adkisson, and Detective Anthony Jansen to testify. Defendant called Tiffany Estes to testify. Both sides introduced certain exhibits in the course of testimony, including the body camera videos of Officers Shepard and Adkisson from the date of the stop and search. (Government's Exhibits ("Gov. Ex.") 1 and 2, respectively).

Officer Kyle Shepard testified that on December 28, 2016, he was assigned as a patrol officer with the City of Covington, Kentucky. (R. 34, at 6). Officer Shepard was uniformed and driving a marked police cruiser, and equipped with a body camera that magnetically mounted to his shirt in the middle of his chest just underneath his collar.[2] (*Id.* at 6, 17). He was tasked with patrolling the area east of Madison Avenue between Pike Street and 26th Street in Covington,

---

[2] Officer Shepard and Officer Adkisson testified that the time listed at the top of the body camera recording does not reflect the accurate time, as it is a uniform setting applied to all of Covington's police cameras and is controlled by the administration. (R. 34, at 18, 61; *see also* Govt. Ex. 1 and Govt. Ex. 2).

Kentucky. (*Id.* at 6). Based upon his training and experience, Officer Shepard testified he believed this to be a high narcotics area. (*Id.* at 8).

At approximately 3:49 p.m. that afternoon, Officer Shepard was patrolling northbound on Garrard Street when he observed a white Honda Accord traveling southbound. (*Id.* at 7). The vehicle had a very dark tint on all the windows, but Officer Shepard noticed specifically that the front windshield was tinted in violation of KRS § 189.110. (*Id.*).

Officer Shepard turned his cruiser around, called for backup, and initiated a traffic stop. (*Id.*). When Officer Shepard approached Defendant Conway's vehicle, he observed the smell of, based upon his training and experience, what he believed to be marijuana emanating from the vehicle. (*Id.* at 8). At the time, Defendant Conway was smoking a Black & Mild cigar. (R. 34, at 9). On cross-examination, Officer Shepard testified that the cigar did not smell like it contained any marijuana. (R. 34, at 34). Officer Shepard notified Defendant he was being stopped because his front windshield was tinted. (*Id.* at 10; *see also* Govt. Ex. 1, at 20:50:13). Mr. Conway provided his identification and complied with the officer's requests for information. (R. 34, at 10). Officer Shepard did not see any drugs or other contraband in the car in plain view. (*Id.* at 46).

Officer Shepard then asked Defendant whether he had any drugs or weapons in the vehicle. (Govt. Ex. 1, at 20:51:28). Defendant questioned why Officer Shepard was asking about drugs or weapons when he was being stopped due to a windshield violation; Officer Shepard responded that he was asking because he smelled marijuana coming from the car. (Govt. Ex. 1, at 20:51:57). Officer Shepard asked Defendant whether anyone had smoked marijuana in the car recently. (Govt. Ex. 1, at 20:52:00). Defendant denied that anyone smoked marijuana and stated that the vehicle did not smell like marijuana. (Govt. Ex. 1, at 20:52:18). Defendant stated that he was going to see his sister Tiffany Estes, pointing to a woman approaching the vehicle. (Govt. Ex. 1,

3

at 20:52:25, 20:56:51).  Officer Shepard asked Ms. Estes to wait and not approach the vehicle during the stop.  (*Id.*).

As Officer Shepard returned to his patrol vehicle to check Conway's information, Officer Galvin Adkisson arrived at the scene.  (R. 34, at 9; Govt. Ex. 1, at 20:52:44).  Officer Adkisson was also a Covington Police Department patrol officer assigned to patrol the same area as Officer Shepard at the time of the subject stop.  (R. 34, at 57).  Officer Adkisson was also equipped with a body camera.  (*Id.* at 60).  Upon approaching the area of the stop, Officer Adkisson conferred with Officer Shepard briefly and then approached Conway's vehicle on the passenger side.  (*Id.* at 57-58).  Officer Adkisson testified that he smelled what, based upon his training and experience, he recognized as marijuana coming from the vehicle.  (*Id.* at 58, 61). Officer Adkisson stood by the vehicle while Officer Shepard checked Defendant's information.  (Govt. Ex. 1, at 20:53:00). Officer Shepard checked AFIA, a driver's license database, as well as NCIC, a national crime database, which returned nothing of note such as a warrant.  (R. 34, at 40-41).

Officer Shepard returned to the vehicle and at that time he and Officer Adkisson observed Defendant start to tear the window tint film off of the inside of the windshield.  (R. 34, at 10, 58; Govt. Ex. 1, at 20:54:56; Govt. Ex. 2, at 20:54:42).  Officer Shepard asked Defendant Conway to step out of the vehicle, advising that he smelled some marijuana in the car and would be patting Defendant down for weapons and conducting a search of the vehicle for the presence of narcotics, specifically marijuana.  (R. 34, at 10; Govt. Ex. 2, at 20:55:14).  Officer Shepard testified that he asked Mr. Conway to step out of the vehicle because he could not safely perform a search with Defendant in the vehicle.  (R. 34, at 10).  Defendant responded that he did not want Officer Shepard to search his car.  (Govt. Ex. 1, at 20:55:00).

4

After Defendant Conway stepped out of the vehicle, Officer Shepard asked Conway to put his hands on top of the vehicle.  (R. 34, at 11; Govt. Ex. 2, at 20:55:48).  Defendant Conway complied with the officer's requests.  Officer Shepard then performed a pat-down of Defendant's person.  (R. 34, at 11; Govt. Ex. 2, at 20:55:50).  Officer Shepard testified that, for officer safety, he performs a pat-down every time he gets someone out of a vehicle if he knows that he is going to be searching the vehicle because he does not want anyone with weapons sitting behind him while he performs the search.  (R. 34, at 11).  During the pat-down, Officer Shepard felt something squishy that sounded like it was in a cellophane bag in Defendant Conway's right pocket.  (*Id.* at 11).  Officer Shepard patted down Defendant's pocket area approximately 10 times over the course of a few seconds.  (*Id.* at 44).  Believing it to be narcotics, Officer Shepard withdrew the item from Defendant Conway's pocket.  (*Id.* at 11-12; Govt. Ex. 2, at 20:56:00).  The item was a bag of white powder which, based upon his training and experience, Officer Shepard believed to be either cocaine or fentanyl.  (R. 34, at 12).  Officer Shepard can be heard on the body camera recording asking Defendant what the substance was.  (Govt. Ex. 1, at 20:56:20; Govt. Ex. 2, at 20:56:20).  Defendant responded, "whatever you put in my pocket."  (Govt. Ex. 1, at 20:56:21).

Upon finding the white powder in Mr. Conway's pocket, Officer Shepard placed Defendant Conway under arrest and searched the rest of his person.  (R. 34, at 13, 44).  Officer Shepard can be heard on the body camera recording asking Defendant if he had any needles in his pockets.  (Govt. Ex. 1, at 20:57:31).  Officer Shepard again stated that he smelled marijuana coming out of the car and asked Defendant whether there was any marijuana in the car, whether he had been arrested before, and how much money he had on his person.  (Govt. Ex. 1, at 20:58:00; Govt. Ex. 2, at 20:58:00).  Defendant denied having marijuana in the car, and both officers responded to Defendant that they could smell marijuana coming from the vehicle.  (Govt. Ex. 1, at 20:58:00;

Govt. Ex. 2, at 20:58:00).  Officer Shepard completed his search of Defendant's person and placed Defendant in the back of the patrol cruiser.  (*Id.* at 13; Govt. Ex. 1, at 20:59:50).

On cross-examination, Officer Shepard testified he did not think he needed to provide Mr. Conway with the *Miranda* warning prior to asking these questions because the purpose of his questions was to perform a search rather than specifically to interrogate Mr. Conway.  (R. 34, at 45-46).   Officer Shepard further testified on cross-examination that he remembered asking Defendant if anyone had smoked marijuana in the car and commenting to Defendant that he smelled burnt marijuana.  (R. 34, at 36-37).  Officer Shepard testified that the purpose of the question was to gauge Defendant's cooperation level.  (*Id.*).  Officer Shepard further testified that he specifically smelled fresh marijuana in the vehicle, though it could have been a mixture of both burnt and fresh marijuana.  (*Id.*).  He testified that fresh and burnt marijuana have different smells.  (R. 34, at 46).  Officer Adkisson testified that he is not able to distinguish between the smell of fresh marijuana versus burnt marijuana, and he did not recall smelling Defendant's Black & Mild cigar during the stop.  (R. 34, at 63).

Once the officers secured Defendant Conway in the patrol cruiser, Officer Shepard and Officer Adkisson convened outside Defendant's vehicle and discussed the quantity of drugs produced from Defendant's pocket, both muting their body cameras.[3]  (Govt. Ex. 1, at 21:02:11). Officers Shepard and Adkisson then searched Defendant Conway's vehicle, with Officer Shepard searching the driver's side, and Officer Adkisson searching the passenger side.  (R. 34, at 13-14, 58).  During the search, the officers found multiple bags of suspected narcotics as well as a bag of

---

[3] Officer Shepard and Officer Adkisson testified that City of Covington policy allows the officers to mute their body cameras if there is anything sensitive being discussed between officers.  (R. 34, at 24-25, 63). Officer Shepard further testified it is his practice to mute the camera if he is having a private conversation with his coworkers in deciding whether certain criminal charges are applicable, or if there is "something evidentiary going on."  (*Id.* at 24-25, 29).

ammunition. (*Id.* at 14). Officer Shepard stated during the search, "I need the marijuana." (R. 34, at 22; Govt. Ex. 1, at 21:06:37; Govt. Ex. 2, at 21:06:37). Officer Adkisson responded, "yeah it reeks of weed in here." (Govt. Ex. 2, at 21:06:52). Officer Shepard then stated, "I can smell it, I just don't know where it's going to be." (Govt. Ex. 1, at 21:06:55; Govt. Ex. 2, at 21:06:55).

Eventually, the officers also located marijuana in the vehicle. (R. 34, at 14). Officer Adkisson was searching the rear passenger side of the vehicle and located approximately one gram of marijuana inside of a leather jacket pocket, wrapped up in some paper and stuffed down into a Black & Mild box. (R. 34, at 23, 46-48, 64; Govt. Ex. 2, at 21:12:04). Officer Adkisson testified that he noticed the smell of marijuana more when he began searching the back seat of the passenger side of the vehicle. (*Id.* at 59). He can be observed on the body camera recording picking a leather jacket up from the back passenger seat, sniffing, and stating "Now it really smells of weed back here." (*Id.* at 62; Govt. Ex. 2, at 21:11:50). Officer Shepard testified that the marijuana that was found was very pungent, stronger than what he typically encounters. (R. 34, at 14, 23). Officer Adkisson also testified that the marijuana he found had a strong smell. (*Id.* at 59).

After the marijuana was found, Officer Shepard returned to Defendant Conway in the police cruiser and informed him of his *Miranda* rights. (*Id.* at 14; Govt. Ex. 1, at 21:26:00). He further informed Defendant that once he arrived at the jail, he would be charged with an additional felony if any other contraband were located during the initial screening and search. (R. 34, at 15). During the drive to the jail, Mr. Conway informed Officer Shepard that he had some contraband hidden in his underwear. (*Id.*; Govt. Ex. 1, at 21:36:25). Officer Shepard pulled over into a parking lot and a further search of Conway's person revealed another bag of narcotics. (R. 34, at 15; Govt. Ex. 1, at 21:36:43).

After recovering the narcotics from Defendant's clothing, Officer Shepard testified that he had a conversation with Defendant Conway in the parking lot regarding the source of the narcotics and the possibility of cooperating. (R. 34, at 16, 27; Govt. Ex. 1, at 21:40:00). Based upon that conversation, Officer Shepard called Detective Anthony Jansen with the Narcotics Unit, who wanted to speak with Mr. Conway. (R. 34, at 16). Officer Shepard then stopped at the Covington Police Department headquarters garage to allow Detective Jansen to interview Defendant Conway. (*Id.* at 16, 27-28; Govt. Ex. 1, at 21:44:00, 21:48:00).

Detective Anthony Jansen testified at the evidentiary hearing that he was working as a narcotics detective for the City of Covington Police Department on the date of Defendant's arrest. (*Id.* at 65-66). Detective Jansen testified that he was not present for the arrest of Defendant Conway. (R. 34, at 70). Officer Shepard contacted Detective Jansen and indicated he had arrested a subject with a quantity of narcotics. (*Id.* at 66). Detective Jansen advised that he would meet Officer Shepard at the Covington Police Department headquarters and see if Defendant wanted to provide any information or intelligence that would help further any investigations. (*Id.*). Detective Jansen read Defendant his *Miranda* rights in the rear of Officer Shepard's patrol vehicle from a printed defendants' rights card provided to him by the Department of Criminal Justice. (*Id.* at 67; *see also* Govt. Ex. 3). Detective Jansen then began interviewing Defendant Conway. (R. 34, at 67; *see also* Govt. Ex. 4). Officer Shepard did not participate in the interview. (R. 34, at 16, 28; R. 34, at 67).

Following Conway's interview with Detective Jansen, Officer Shepard transported Conway to jail. (*See* Govt. Ex. 1). After Defendant's arrest, Officer Shepard applied for a search warrant to search five cellular phones recovered from the December 28, 2016 search of

Defendant's vehicle.  (*See* R. 34, at 30; Deft. Ex. 1; Deft. Ex. 2).  Following the testimony of Officer Shepard, Officer Adkisson, and Detective Jansen, the United States rested.  (R. 34, at 71).

Defendant then called Tiffany Estes.  (*Id.*).  Ms. Estes testified that Defendant was pulled over near her home on December 28, 2016.  She went outside and was present at the scene while the vehicle was searched.  (*Id.* at 72).  Ms. Estes further testified that she stood "about three to five feet, three to five inches, somewhere in there" from Defendant's vehicle and did not smell any marijuana emanating from the car.  (*Id.*).  Ms. Estes testified that she was concerned about testifying in front of Officer Shepard because of incidences of police harassment in the neighborhood and out of fear that she would be a victim of getting pulled over.  (*Id.* at 73).  On cross-examination, Ms. Estes testified that she was standing a few feet away from Defendant's vehicle and never actually leaned inside.  (*Id.* at 74).

At the close of evidence, counsel for the parties provided brief oral argument.  (*Id.* at 77).  Counsel for the United States argued that, for purposes of the hearing, the only important question is whether the officers smelled marijuana.  (*Id.*).  Counsel pointed out that both officers testified under oath that they smelled marijuana, with no evidence of bias or motive; additionally, the body camera videos demonstrated that contemporaneously during the encounter, both officers repeatedly discussed the smell of marijuana.  (*Id.*).  Moreover, consistent with their testimony, the officers did find marijuana.  (*Id.* at 78).  Although it was a small amount, the officers testified that the marijuana was very pungent and smelled strongly.  (*Id.*).  Based on the officers' observations, the Government argued that they had probable cause to search the car.  (*Id.*).  While not conceding that the subsequent pat-down of Defendant was improper, the Government asserted that nothing that happened during the course of the pat-down was important, because the officers found marijuana, heroin, cocaine, and bullets during the search of the vehicle and Defendant inevitably

would have been arrested as a result and subsequently searched incident to that arrest. (*Id.*). Counsel for the United States further clarified that that the Government did not intend to rely upon any statements made by Defendant prior to when Officer Shepard read Defendant his *Miranda* rights and that none of Defendant's statements at that point were really incriminating. (*Id.* at 79).

Counsel for Defendant then presented brief oral argument. (R. 34, at 80). Defense counsel first argued that the pat-down of Defendant was unconstitutional because Officer Shepard testified that he searches every subject during a vehicle search. (*Id.*). A pat-down is appropriate not as a matter of course, but rather only upon a showing of reasonable suspicion based upon a particularized and objective basis for suspecting that the suspect is armed and dangerous. (*Id.* at 81) (citing *United States v. Noble*, 762 F.3d 509, 522 (6th Cir. 2014)). Moreover, defense counsel pointed out that Officer Shepard had backup present at the scene when he patted Defendant down, so he should not have had a concern that Defendant Conway was a safety threat. (R. 34, at 81).

Additionally, defense counsel agreed with the United States that the predominant issue at hand is whether the officers actually smelled the marijuana that triggered probable cause. (*Id.* at 81-83). This requires a credibility determination between the testimony of the two officers, who testified that they smelled marijuana, and the testimony of Ms. Estes, who testified that she could not smell marijuana emanating from the vehicle. (*Id.* at 81). Defense counsel questioned the credibility of the officers when Officer Adkisson testified that he could smell a small amount of marijuana but could not recall smelling Defendant's Black & Mild cigar, which Defendant was clearly smoking in the body camera recordings. (*Id.* at 81-82). Additionally, defense counsel characterized Officer Shepard's testimony that he smelled a mixture of fresh and burned marijuana as a post-hoc justification, as Officer Shepard stated in the body camera recording that he smelled burnt marijuana, and asked Defendant if anyone had been smoking marijuana in the vehicle. (*Id.*

at 82).  Defense counsel further cautioned of the potential for police officers to pretend to smell marijuana as a pretext for conducting a search.  (*Id.* at 83).  Defense counsel concluded that a finding that the search itself was unconstitutional due to lack of probable cause will resolve all of the remaining issues.  (*Id.*).  Following counsel's presentation of argument, the Court placed Defendant's subject Motion to Suppress (R. 25) under submission for issuance of a Report and Recommendation.  (R. 34, at 83).

## II.    ANALYSIS

Defendant Conway seeks suppression of evidence on five grounds.  First, Defendant argues that the search of his vehicle was unconstitutional because a traffic stop does not justify the search of a vehicle for reasons unrelated to the stop.  (R. 25, at 3).  Second, Defendant argues that Officer Shepard's *Terry* frisk of Defendant's person was unconstitutional because Officer Shepard lacked a reasonable suspicion that Defendant Conway was armed. (R. 25, at 3).  Third, Defendant argues that even if the *Terry* frisk were deemed constitutional, Officer Shepard exceeded the permissible scope of a search for weapons when he searched for evidence of contraband.  (R. 25, at 3).  Fourth, Defendant argues that the warrant used to search the seized cellular phones was invalid because it was overbroad and lacked particularity.  (R. 25, at 3).  Finally, Defendant argues that his statements to police should be suppressed because he was subjected to a custodial interrogation without being first advised of his Fifth Amendment rights.  (R. 25, at 4).  The Court will address each argument in turn.

### A.    The officers' detection of the smell of marijuana emanating from Defendant's vehicle provided them probable cause to conduct a search.

The Fourth Amendment guarantees the right of the people to be secure in their persons against unreasonable searches and seizures.  U.S. Const. amend. IV.  The Fourth Amendment's prohibition against unreasonable searches and seizures "extend[s] to brief investigatory stops of

persons or vehicles that fall short of traditional arrest." *United States v. Chandler,* 437 F. App'x

420, 425 (6th Cir. 2011) (quoting *United States v. Luqman,* 522 F.3d 613, 616 (6th Cir. 2008)).

Consistent with this amendment, a police officer may effect a traffic stop if the officer "possess[es]

either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United

States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (internal citations omitted). *See also Gaddis ex

rel. Gaddis v. Redford Tp.,* 364 F.3d 763, 771 n.6 (6th Cir. 2004) (internal citations omitted)

(stating that an officer is permitted to make an investigative stop when he has "probable cause to

believe a civil traffic violation has occurred"); *United States v. Davis,* 430 F.3d 345, 352 (6th Cir.

2005) (internal citations omitted) ("[S]o long as the officer has probable cause to believe that a

traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not

violate the Fourth Amendment.").

　　An officer may initiate a traffic stop based upon reasonable suspicion that a defendant's

windshield is tinted in violation of state statute. *See United States v. Shank*, 543 F.3d 309, 313

(6th Cir. 2008) ("Due to the officers' familiarity with window tinting and their estimate that the

vehicle was tinted substantially darker than permitted by law, we agree with the district court's

determination that the officers had a proper basis to initiate the traffic stop."); *United States v.

Flores*, 30 F. Supp. 3d 599, 603 (E.D. Ky. 2014) ("[T]he relevant question is not whether Flores's

tinted windows actually violated Georgia law, or whether [the officer] examined the tinting after

making his initial stop.  Rather, the question is whether he had probable cause to believe the

window tinting was unlawful at the time of the stop.").  Such a stop is permissible even if the

violation is not the officer's subjective motivation. *United States v. Akram*, 165 F.3d 452, 455 (6th

Cir. 1999) (stating that with regard to a traffic stop, an officer who has probable cause to believe

12

a civil traffic violation has occurred may stop a vehicle regardless of his or her subjective motivation in doing so) (citing *Whren v. United States*, 517 U.S. 806 (1996)).

If an officer detects marijuana emanating from a vehicle during a lawful stop, the officer has probable cause to search the vehicle. The Sixth Circuit has expressly held that the smell of marijuana emanating from a vehicle establishes probable cause for an officer to believe that marijuana is present inside. *See United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993); *United States v. Crumb*, 287 F. App'x 511, 514 (6th Cir. 2008) (noting that the Sixth Circuit has "followed *Garza* consistently in holding that the detection of a narcotic's odor, by itself, is sufficient to establish probable cause to conduct a lawful search of a vehicle"); *United States v. Foster*, 376 F.3d 577, 588 (6th Cir. 2004) (officers' detection of the smell of marijuana coming from the defendant's vehicle provided them with probable cause to search without a search warrant which turned a lawful *Terry* stop into a lawful search); *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002) ("This court has held that an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search.").

In this case, Defendant does not contend that Officer Shepard lacked probable cause to stop Defendant Conway for unlawfully tinted windows. (*See* R. 25, at 11) (citing KRS § 189.110). Rather, Defendant Conway argues that the search of his vehicle was unconstitutional because a traffic stop does not justify the search of a vehicle for reasons unrelated to the stop. (R. 25, at 3, 10). While acknowledging that "the smell of marijuana emanating from a vehicle may establish probable cause to believe that an officer will find marijuana inside," Defendant argues that "the officer must, indeed, actually smell marijuana for probable cause to exist." (R. 25, at 11) (citing *United States v. Warren*, No. 3:14-cr-8-CRS-DW, 2015 U.S. Dist. LEXIS 175839 (W.D. Ky. Oct. 22, 2015) (upholding warrantless search)). Defendant's argument that the officers lacked probable

cause to search the vehicle because they did not actually smell marijuana is unpersuasive based upon the Court's review of the record.

Here, it is undisputed that Defendant's windshield was unlawfully tinted. Accordingly, Officer Shepard's decision to stop Defendant was permissible, regardless of Defendant's argument that Officer Shepard made the decision to initiate the stop before seeing Mr. Conway. (*See* R. 25, at 11). The evidence demonstrates that, following their lawful stop, the officers then smelled marijuana emanating from the vehicle. The body camera recordings show contemporaneous statements and reactions from the officers supporting their testimony that they smelled marijuana. The Court finds the testimony of Officer Adkisson as well as his body camera recording particularly persuasive. Officer Adkisson can be observed on the body camera recording stating that "it reeks of weed in here," then picking a leather jacket up from the back passenger seat, sniffing, and stating "Now it really smells of weed back here." (*Id.* at 62; Govt. Ex. 2, at 21:11:50). Moreover, the officers did find marijuana in the vehicle, further supporting their statements. The recording demonstrates that the officers did not know the location of the marijuana when the search began; Officer Adkisson's contemporaneous reactions as he neared the location of the marijuana indicate that he was reacting to a smell. The Court finds that this type of contemporaneous reaction is credible and less likely to be feigned. Based upon the officers' observation of the smell of marijuana emanating from Defendant's vehicle, therefore, the subsequent search of Defendant's vehicle was not unconstitutional.

Defendant seeks to rely upon *Warren*, 2015 U.S. Dist. LEXIS 175839, in support of his assertion that the officers' testimony is not credible; however, the *Warren* decision is distinguishable. In *Warren*, the officers stopped the defendant's vehicle merely because he looked "nervous" upon seeing the officers' car, which was unmarked. *Id.* at *6-7. The officers further

claimed that they first smelled marijuana emanating from the vehicle when they were approximately five feet away, although the marijuana was stored in a sealed plastic baggie. *Id.* at *7, 10-11. The U.S. Magistrate Judge in *Warren* found that the nervous appearance of the defendant could not be considered to be the basis for probable cause, and that the testimony of the officers indicated that they did not have reasonable suspicion of criminal conduct when they initially approached the defendant's vehicle. *Id.* at *20-21. The Magistrate Judge further questioned how the officers were able to detect the small quantity of marijuana a full five feet from the passenger's side of the vehicle, when the marijuana was inside a knotted plastic baggie. Here, unlike the officers in *Warren*, Officer Shepard testified that he smelled marijuana after leaning in the open window of Defendant's vehicle. Furthermore, unlike the sealed plastic baggie in *Warren*, here the marijuana was wrapped in paper and characterized by both officers as particularly pungent and strong in smell.

Additionally, the Court finds that the testimony of Ms. Estes, Defendant's sister, does not vitiate the Government's establishing that the officers smelled marijuana when Ms. Estes admitted during the evidentiary hearing that she was standing several feet away and did not lean into the vehicle. Nor is there evidence that the officers were motivated by bias, and the Court finds that Officer Shepard and Officer Adkisson had incentive to tell the truth because there would be negative consequences to their careers in law enforcement if they were untruthful. *See United States v. Solomon*, No. 6:13-cr-40-GFVT-HAI, 2015 WL 5474395 (E.D. Ky. Sept. 17, 2015) (finding the U.S. Magistrate Judge "appropriately weighed what the witnesses had to gain or lose from their testimony) (citing *United States v. Lockhart*, No. 7:12-cr-8-ART-HAI-2, 2013 WL 1412338, at *4 (E.D. Ky. Apr. 4, 2013)). Based upon their detection of the smell of marijuana emanating from Defendant Conway's vehicle, the officers possessed the requisite probable cause

to search the vehicle without a search warrant, and Defendant's Motion to Suppress on this basis should be denied.

>    **B.    Suppression is unwarranted because Officer Shepard's search of the vehicle provided probable cause to arrest Mr. Conway, and the evidence seized from the initial search of his person would have inevitably been discovered.**

Defendant's second and third arguments are related. Defendant's second argument asserts that all evidence obtained as a result of Officer Shepard's *Terry* frisk of Mr. Conway's person should be suppressed because Officer Shepard lacked reasonable suspicion to believe that Mr. Conway was armed and dangerous. (R. 25, at 3, 14). Similarly, Defendant's third argument asserts that even if the pat-down were deemed constitutional, Officer Shepard exceeded the permissible scope of a search for weapons when he searched for evidence of contraband. (*Id.* at 3, 14).

When an officer makes a *Terry* stop, he may also perform a precautionary search—known as a "frisk" or "pat-down"—whenever he has a reasonable suspicion that the person searched may be armed and dangerous. *United States v. Pendelton*, No. 3:15-cr-116-CRS-4, 2017 WL 2722305, at *6 (W.D. Ky. June 23, 2017). Reasonable suspicion is based upon the totality of the circumstances and exists if a reasonably prudent person would be warranted in the belief that his safety or that of others was in danger. *Id.* (citing *United States v. Noble*, 762 F.3d 509, 521-22 (6th Cir. 2014)). Without more, "a person's mere presence in a car, which the police believe is connected to drug trafficking, is not an automatic green light for frisking that person." *Noble*, 762 F.3d at 523-24.

In *Noble*, the Sixth Circuit determined that a police officer conducted a pat-down in violation of the Fourth Amendment because he lacked reasonable suspicion to suspect that the defendant was armed and dangerous. *Id.* at 526. The officer's basis for the pat-down was the fact that the defendant, Noble, seemed nervous, that Noble was in a car suspected of involvement in

16

drug trafficking, and due to the officer's knowledge, from training and experience, that individuals involved in drug trafficking are generally armed. *Id.* at 522. The Sixth Circuit rejected the officer's bases for conducting the search. In examining the totality of the circumstances, the Sixth Circuit found it significant that the police officer did not recognize Noble as a person with a criminal history, and Noble was not behaving in a threatening manner. *Id.* at 523-24. Furthermore, the *Noble* court noted that the officer had no specific facts linking Noble to drug trafficking and did not know who Noble was before the pat-down. *Id.* at 524. The *Noble* court explained that while an officer may rely on his training and experience that drug dealers frequently carry weapons, there must be "some corroboration that particular individuals are involved in dealing drugs before allowing a frisk for weapons." *Id.* at 524.

Here, Officer Shepard testified that he performs a pat-down "[e]very time I get someone out of a vehicle, if I know I'm going to be searching the vehicle, [as] typically my back is going to be to the people that I get out of the vehicle. Just for my officer safety, I don't want anybody with weapons sitting behind me while I'm doing that." (R. 34, at 11). On its face, Officer Shepard's practice of conducting a pat-down every time he conducts a vehicle search fails to comport with the Fourth Amendment. A *Terry* pat-down is only appropriate when a reasonably prudent person under the circumstances would be warranted in the belief that his safety or that of others was in danger. *See Noble*, 762 F.3d at 521-22.

Moreover, as applied to the pat-down at issue in this case, Officer Shepard failed to comport with the Fourth Amendment. As in *Noble*, the totality of the circumstances indicate that when he initiated the stop, Officer Shepard lacked reasonable suspicion in the form of a particularized and objective basis for suspecting that Mr. Conway was armed and dangerous. Officer Shepard believed the area to be a high drug trafficking area; however, just as in *Noble*,

Officer Shepard had no specific facts linking Mr. Conway to drug trafficking, and Officer Shepard did not know who Mr. Conway was prior to the pat-down or otherwise have reason to believe that Defendant had a criminal history. Defendant Conway was stopped for a traffic infraction, and Officer Shepard's search of criminal databases did not indicate any prior criminal activity. Moreover, Mr. Conway was cooperative and complied with the officer's directives. Without more, Mr. Conway's mere presence in a vehicle which Officer Shepard believed was connected to drug trafficking did not provide reasonable suspicion to believe Mr. Conway was armed and dangerous. Furthermore, Officer Adkisson was on the scene to provide backup to Officer Shepard, minimizing officer safety concerns. Accordingly, the initial search of Mr. Conway's person was conducted in violation of the Fourth Amendment.[4]

Nonetheless, suppression is unwarranted under the circumstances. When an independent, untainted investigation inevitably would have uncovered the same evidence or other compelling facts establish that the disputed evidence inevitably would have been discovered, the tainted evidence should be admissible. *United States v. Flores*, 30 F. Supp. 3d 599, 605 (E.D. Ky. 2014) (citing *United States v. Kennedy,* 61 F.3d 494, 499 (6th Cir.1995); *United States v. Witherspoon*, 467 F. App'x 486, 490 (6th Cir. 2012); *Murray v. United States*, 487 U.S. 533, 539 (1988)). In *Flores*, a police officer initiated a traffic stop based upon, *inter alia*, the defendant's illegally tinted windows. *Id.* at 602. After making the stop, the defendant handed the officer a fake Kentucky identification card, and the police officer asked him to step out of the vehicle. *Id.* Once outside

---

[4] Based upon the finding that Officer Shepard's initial search of Mr. Conway's person violated the Fourth Amendment, the Court need not address Defendant's argument that even if the *Terry* frisk were deemed constitutional, Officer Shepard exceeded the permissible scope of a search for weapons when he patted Defendant's pocket multiple times and was able to determine that Defendant possessed contraband "only after probing and investigating what he certainly knew was not a weapon[.]" (R. 25, at 15) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993)).

of the vehicle, the police officer asked the defendant if he had any guns or knives.  The defendant answered no, but pointed to a bulge in his pocket that he said was money he was carrying to buy a car.  *Id.*  The police officer then conducted a pat-down.  *Id.*  The defendant subsequently moved to suppress all evidence obtained during the encounter on the grounds that the officer violated his Fourth Amendment rights.  *Id.*

Rejecting Flores's argument that suppression was warranted, the district court in *Flores* noted that the police officer uncovered drug paraphernalia and thousands of dollars hidden in the doors of the vehicle.  *Id.* at 605.  The district court reasoned that "[u]nder these circumstances, [the officer] would have probable cause to arrest and search Flores for any contraband he might be hiding on his person, and the cash would inevitably be discovered."  *Id.*  The district court concluded that "the evidence discovered in the car provided reasonable grounds to believe that Flores and his companions were engaged in drug-trafficking sufficient to justify an arrest, and upon such an arrest Deputy Broce would be permitted to search Flores's person for any other contraband or evidence of the crime."  *Id.* (citing *Chimel v. California,* 395 U.S. 752, 763 (1969)).  Accordingly, because the money found in Flores's pocket during the pat-down would have been inevitably discovered, the district court held that the exclusionary rule did not apply, and Flores's motion to suppress was denied.  *Id.*

Here, just as in *Flores*, Officer Shepard initiated a traffic stop based upon Defendant's illegally tinted windshield and subsequently uncovered drug paraphernalia and other incriminating evidence in a search of Defendant Conway's vehicle.  *See* Section A., *supra*.  The evidence discovered in Mr. Conway's vehicle—including several grams of cocaine and heroin, as well as marijuana—provided reasonable grounds for Officer Shepard to believe that Defendant Conway was engaged in drug trafficking sufficient to justify an arrest, and upon such arrest Officer Shepard

would be permitted to search Conway's person for any other contraband or evidence. Accordingly, because, under the circumstances, Officer Shepard had probable cause to arrest and search Mr. Conway for any contraband he might be hiding on his person, and the evidence seized from the initial search of his person would have inevitably been discovered, the exclusionary rule does not apply, and Conway's Motion to Suppress (R. 25) should be denied.

### C. Defendant failed to demonstrate that the search warrant for the five cell phones seized during the traffic stop lacked particularity.

Defendant next argues that evidence obtained from the five cellular phones seized from Mr. Conway's vehicle should be suppressed because the search warrant obtained by Officer Shepard lacked particularity in violation of the Fourth Amendment. (R. 25, at 3, 16). The burden is on Defendant Conway to establish "that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011). The Fourth Amendment guarantees the right of liberty against unreasonable searches and seizures by providing that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. *See also United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003) ("It is well-settled that items to be seized pursuant to a search warrant must be described with particularity to prevent the seizure of one thing under a warrant describing another in violation of the Fourth Amendment."). "The chief purpose of the particularity requirement [is] to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." *Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco, and Firearms*, 452 F.3d 433, 441 (6th Cir. 2006); *see also Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010) (stating that the particularity requirement was designed to "curb the abuses of general warrants, devices which provided British

20

officers with broad discretion to search the homes of citizens of the Colonies for evidence of vaguely specified crimes.").

The particularity requirement may be satisfied through the express incorporation or cross-referencing of a supporting affidavit that describes the items to be seized, even though the search warrant contains no such description. *Richards*, 659 F.3d at 537. "[T]he degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001) (internal citations omitted); *see also Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) ("A search warrant must particularly describe the things to be seized, but the description, whose specificity will vary with the circumstances of the case, will be valid if it is as specific as the circumstances and the nature of the activity under investigation permit."). "[T]he affidavit must establish a nexus between the place to be searched and the things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched. *Ellison*, 625 F.3d at 958; *see also United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015) (finding a sufficient nexus to tie a phone to the defendant's alleged criminal activity when the affidavit noted that the defendant was using the cell phone when officers seized it incident to arrest).

The Fourth Amendment generally requires police to obtain a warrant before searching the digital information stored on a cellular phone, even when the phone is seized incident to arrest. *See Riley v. California*, 134 S. Ct. 2473, 2493 (2014). As the U.S. Supreme Court noted, "modern cellphones may contain a litany of information, in some cases equivalent to a personal computer." *Bass*, 785 F.3d at 1049 (citing *Riley*, 134 S. Ct. at 2489). "Federal courts, however, have rejected most particularity challenges to warrants authorizing the seizure and search of entire personal or business computers, because criminals can—and often do—hide, mislabel, or manipulate files to

21

conceal criminal activity such that a broad, expansive search of the computer may be required." *Bass*, 785 F.3d at 1049-50 (citing *Richards*, 659 F.3d at 538-39).  While the Government is not granted "a *carte blanche* to search every file on the hard drive . . . it is folly for a search warrant to attempt to structure the mechanics of the search" as to unduly restrict legitimate search objectives.  *United States v. Lostutter*, No. 5:16-cr-62-DCR-REW, 2016 WL 8761771, at *5 (E.D. Ky. Oct. 24, 2016) (citing *Richards*, 659 F.3d at 538).  Accordingly, the Sixth Circuit employs "the Fourth Amendment's bedrock principle of reasonableness on a case-by-case basis[.] *Lostutter*, 2016 WL 8761771, at *6; *see also United States v. Asker*, 676 F. App'x 447, 462 (6th Cir. 2017).  Moreover, "infirmity due to overbreadth does not doom the entire warrant; rather, it requires the suppression of evidence seized pursuant to that part of the warrant . . . but does not require the suppression of anything described in the valid portions of the warrant . . . ."  *Greene*, 250 F.3d at 477.  *See also Lostutter*, 2016 WL 8761771.

In *United States v. Rarick*, 636 F. App'x 911, 914 (6th Cir. 2016), the defendant challenged a search warrant's expansive language authorizing the search of "any and all electronic data" and "any and all communications" contained in the defendant's cell phone seized during a traffic stop, when the search unearthed child pornography unrelated to the purpose of the traffic stop.  *Id.*  The Sixth Circuit found that "certain portions of the warrant were not limited to files specific to what the government was searching for[.]  However, the remedy in this circuit is not suppression of all of the items seized under the warrant, but rather severance of the infirm portions from the remainder which passes constitutional muster."  *Id.* at 915 (internal citations omitted).  The Sixth Circuit in *Rarick* noted that "it would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and the magistrate erred in seeking and permitting a search for other

items as well." *Id.* (internal citations omitted). Accordingly, the Sixth Circuit upheld the warrant because certain portions, such as the portion authorizing seizure of images and videos, were specifically targeted to what the officers had probable cause to search, and no evidence offered against the defendant was seized pursuant to the overbroad portions of the warrant. *Id.*

Here, Mr. Conway does not expressly dispute the existence of probable cause supporting the warrant. Rather, Defendant contends that the search warrant was overbroad, as it extended the scope of the search not only to specific data or folders on the phone such as text messages, phone numbers, and call logs, but to "any additional information" as well. (R. 25, at 17; R. 25-4). Likewise, Defendant asserts that the warrant was overbroad because its text did not constrain the search to evidence of a specific crime, and the affidavit in support of the application for the warrant generally references only a narcotics trafficking investigation rather than a specific crime. (*See id.* at 16).

Defendant relies solely upon persuasive authority in support of his argument, all of which was decided prior to the Supreme Court's clarification of the scope of cellular phone searches in *Riley v. California*, 134 S. Ct. 2473 (2014). (*See* R. 25, at 16-17) (citing *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013); *United States v. Otero*, 563 F.3d 1127, 1133 (10th Cir. 2009); *United States v. Burgess*, 576 F.3d 1078, 1091 (10th Cir. 2009)). In applying *Riley*, the Sixth Circuit has consistently rejected most particularity challenges in this context. *See Bass*, 785 F.3d at 1049-50 (citing *Richards*, 659 F.3d at 538-39).

Like the defendant in *Rarick*, here Defendant Conway failed to demonstrate that evidence was seized from the cellular phones pursuant to the overbroad portion of the warrant. Rather, Defendant Conway impermissibly seeks to invalidate the warrant in toto. *See Rarick*, 636 F. App'x at 915. Officer Shepard's affidavit demonstrates that the search was part of a narcotics trafficking

investigation and authorizes a search of the five seized cellular phones for text messages, phone numbers in contacts and call logs, and photographs—items that logically would contain evidence of drug trafficking. Here, the warrant authorized the search for evidence of drug trafficking; however, at the time of the seizure, the officers could not have known where this information was located in the phone or in what format. Thus, the broad scope of the warrant was reasonable under the circumstances at that time. *See Bass*, 785 F.3d at 1050.

The circumstances of this case are akin to warrants that the Sixth Circuit found to be sufficiently particularized in *United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018). The *Castro* defendant argued that the warrants were not sufficiently particularized because they authorized officers to search for evidence of "a crime." *Castro*, 881 F.3d at 964. Rejecting this argument, the Sixth Circuit explained that, read as a whole and in context, the "crime" listed on the warrant referred to the statement of probable cause to believe evidence of aggravated burglary would be found on the phones. *Id.* at 964-65. Here, just as in *Castro*, applying a commonsense reading in context with the supporting affidavit, the crime listed on the warrant referred to Officer Shepard's statement of probable cause to believe evidence of trafficking in narcotics, including cocaine and heroin, would be found on the phones. *See Castro*, 881 F.3d at 964-65.

Likewise, the Sixth Circuit rejected the *Castro* defendant's challenge to the "catch-all" phrase tacked onto the operative sentence in each warrant, which authorized search of "any other files, deleted or not involved in this or any other unlawful activities." *Castro*, 881 F.3d at 965. As nothing in the record showed that any evidence was seized under this section, the Sixth Circuit in *Castro* upheld the remaining valid sections as sufficiently particularized. *Id.* at 965-66. Here, just as in *Castro*, the catch-all phrase on the warrant authorizing search of "any additional information" does not invalidate the remaining, sufficiently particularized sections, and, as in *Castro*, Defendant

failed to demonstrate that any evidence was seized under this section.  Accordingly, Defendant has failed to show that the search warrant was unreasonable.

Additionally, even if Defendant had met his burden to demonstrate that the search warrant was constitutionally overbroad, the good-faith exception would still permit the introduction of gathered evidence.  *See Asker*, 676 F. App'x at 462 (citing *United States v. Leon*, 468 U.S. 897, 920-22 (1984) (holding that exclusionary rule should not apply to evidence obtained by an officer who conducts a search in reasonable reliance on a search warrant that was issued by a neutral and detached magistrate, but is ultimately found to be unsupportable by probable cause or otherwise defective)).  Generally, "suppression of evidence obtained pursuant to a search warrant later found to be defective should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."  *United States v. McClain*, 444 F.3d 556, 564 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 923).  In particular, suppression is not appropriate unless (1) the magistrate judge was "misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the magistrate abandoned his judicial role or neutrality; (3) the warrant was so lacking in indicia of probable cause as to render official belief in its existence unreasonable; or (4) the warrant was so facially deficient that it could not reasonably be presumed valid."  *McClain*, 444 F.3d at 564 (citing *Leon*, 468 U.S. at 923).

Defendant contends that the third exception applies here, stating that the lack of particularity in the warrant caused it to be so facially deficient that it could not reasonably be presumed valid.  (R. 28, at 6).  The conclusion that the officers' reliance on the warrant was objectively reasonable "requires a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause."  *United States v. Higgins*, 557 F.3d 381, 391

(6th Cir. 2009) (citing *Leon*, 468 U.S. at 922 n.23).  In contrast, a finding that a warrant is plainly invalid requires a showing that "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."  *Higgins*, 557 F.3d at 391 (internal citations omitted).  This is a much higher showing.  For example, the U.S. Supreme Court found a warrant was plainly invalid when it did not describe the items to be seized at all.  *See Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004).

Here, a reasonably well trained officer would not have known that the search was illegal. Officer Shepard's affidavit stated that he sought to search the cellular phones to further his narcotics trafficking investigation.  Officer Shepard set forth in his affidavit a description of his investigation, including a description of the recovery of the five cellular phones in addition to a large quantity of controlled substances, including approximately 4 grams of cocaine and 2 grams of heroin in Defendant's vehicle as well as his person.  (R. 25-4, at 4-5).  *See United States v. Raglin*, 5:15-cr-22-KKC, 2015 WL 5198123, at *3 (E.D. Ky. Sept. 4, 2015), *aff'd*, 663 F. App'x 409 (6th Cir. 2016) (citing *Baranski*, 452 F.3d at 439) (holding that the particularity requirement was satisfied even though the warrant itself did not describe with particularity the items to be seized when the warrant expressly incorporated an affidavit that did describe them).  Additionally, Officer Shepard noted in the supporting affidavit that a criminal history check revealed that the Defendant had prior convictions for trafficking in narcotics.  (R. 25-4, at 5).

The affidavit described the make and model of the cellular phones to be searched, as well as the type data on the cellular phones to be searched, including text messages, phone numbers, and photos.  This supporting affidavit therefore specifically describes the items to be searched and the information to be seized.  This description is not comparable to the circumstances in *Groh*,

where the warrant was plainly invalid because it did not describe the items to be seized at all.  *See Groh*, 540 U.S. 551.

The fact that the affidavit also contains a "catch all" phrase extending to "any additional information, including photos, which can be stored on the cell phone SIM card, phone itself, or any other type of removable electronic storage media card," (*see* R. 25-4, at 4), does not negate Officer Shepard's particularized description.  Defendant points to no binding authority, and this Court has not encountered any such authority, indicating that a warrant authorizing search of "any additional information" on a cellular phone in addition to specific information is so facially deficient that it could not reasonably be presumed valid.  *See United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018) (warrant containing "catch-all phrase" authorizing search of "any other files" in seized cellular phones did not invalidate the remaining sections which were sufficiently particularized).  Accordingly, because the officers' reliance on the warrant was objectively reasonable, Defendant's Motion to Suppress should be denied.

**D.**     **Inculpatory statements made by Defendant Conway after he received the *Miranda* warning are admissible.**

Finally, Defendant argues that any statements made by Mr. Conway in response to Officer Shepard's questioning after handcuffing Defendant should be suppressed, as the information was obtained in violation of his Fifth Amendment right against self-incrimination.  (R. 25, at 4, 18). The Fifth Amendment provides that no person "shall be compelled in any criminal case to  be a witness against himself[.]"  U.S. Const. amend. V.  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the U.S. Supreme Court held that this privilege against self-incrimination applies to a criminal suspect subjected to custodial interrogation. Specifically, statements taken during a custodial interrogation cannot be admitted to establish guilt unless the accused was provided a full and

27

effective warning of his rights at the outset of the interrogation process and knowingly, voluntarily and intelligently waived his rights. *Id.*

Here, the United States appropriately concedes that the statements made by Defendant Conway after being handcuffed and prior to receiving a *Miranda* warning are inadmissible, stating that "[t]he United States does not intend to offer any statements from [Mr. Conway] that preceded the warning." (*See* R. 27, at 4-5; *see also* R. 34, at 80). However, the parties dispute the admissibility of Defendant's statements made after Officer Shepard returned to Defendant Conway in the police cruiser and *Mirandized* him. (R. 34, at 14; Govt. Ex 1, at 21:26:00). Defendant asserts that the *Miranda* warning he received was unconstitutionally ineffective, because he was warned in the middle of an interrogation and his post-*Miranda* statements therefore constitute part of a single, unwarned sequence of questioning. (R. 28, at 7). When a defendant is subjected to custodial interrogation and therefore a *Miranda* warning is required, the United States bears the burden of demonstrating by a preponderance of the evidence that the defendant's statements were nevertheless voluntary. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

The U.S. Supreme Court addressed the issue of *Miranda* warnings "delivered midstream" in a plurality opinion in *Missouri v. Seibert*, 542 U.S. 600 (2004). *See United States v. Ray*, 803 F.3d 244, 272 (6th Cir. 2015) (expressly "adopting the multi-factor test announced by the *Seibert* plurality"). In *Seibert*, the interrogating officer began questioning the defendant without advising him of his *Miranda* rights. *Id.* at 604. After the defendant confessed, the officer then provided a *Miranda* warning and resumed questioning to lead the suspect back over the same ground. *Id.* The plurality opinion, which was joined by four of the Justices, held that "[t]he threshold issue when interrogators question first and warn later is . . . whether it would be reasonable to find that in these circumstances the warnings could function effectively as *Miranda* requires." *Id.* at 611-12.

28

The plurality set forth five relevant factors that bear on whether *Miranda* warnings delivered midstream could be effective: (1) the completeness and detail of the questions and answers in the first round of interrogation; (2) the overlapping content of the two statements; (3) the timing and setting of the first and second rounds; (4) the continuity of police personnel; and (5) the degree to which the interrogator's questions treated the second round as continuous with the first. *Id.* at 615. These factors, all of which concern the relationship between the initial and subsequent interrogations, are intended to aid courts in determining whether an initial, unwarned interrogation operated to "thwart *Miranda's* purpose of reducing the risk that a coerced confession would be admitted." *Id.* at 617.

Applying these factors in *Seibert*, the plurality found that the earlier and later statements realistically formed part of a single, unwarned sequence of questioning. *Id.* at 612 n.4. Seibert's unwarned interrogation was extensive in nature and left "little, if anything of incriminating potential left unsaid." *Id.* at 616. The warned phase of questioning proceeded after a pause of only about fifteen minutes, at the police station, the same location as the earlier unwarned segment. *Id.* at 615-16. Furthermore, rather than differentiating between the previous interrogation and post-*Miranda* questioning, the officer stated "we've been talking for a little while about what happened on Wednesday the twelfth, haven't we?"—thereby giving the impression that the further questioning was a mere continuation of the earlier unwarned interrogation. *Id.* Based upon these factors, the plurality determined that a reasonable person in Ms. Seibert's circumstances would not have understood the *Miranda* warning to convey a message that she retained a choice about continuing to talk. *Id.* at 617.

Here, unlike the circumstances in *Seibert*, application of the five *Seibert* factors indicates that the post-*Miranda* questioning that occurred after Officer Shepard returned to the police cruiser

was distinct from the first, unwarned and inadmissible segment that occurred when Defendant was handcuffed outside of his vehicle. *See Seibert*, 542 U.S. at 612. The only factor weighing in favor of a finding of continuity between the two custodial interrogations is the continuity of police personnel, as Officer Shepard was the one asking questions on both occasions; the remaining factors weigh in favor of a finding that the interrogations were not continuous in nature.

The first of the factors that bear on the effectiveness of *Miranda* warnings, the completeness and detail of the first round of interrogation, weighs against a finding of continuity between the two custodial interrogations. While the officers in *Seibert* interrogated the defendant extensively at the police station prior to delivering the *Miranda* warning, here the questioning of Defendant near his vehicle was preliminary in nature, and focused mainly upon the potential presence of marijuana or weapons in the vehicle. The instant circumstances present a much different picture than those in *Seibert* where the extensive interrogation left "little, if anything of incriminating potential left unsaid." *Seibert*, 542 U.S. at 616. Rather, the majority of the inculpatory information gained by the officers occurred after Defendant received the *Miranda* warning as he sat in the police cruiser. The next factor, the timing and setting of the first and second segments, also weighs against a finding of continuity. Unlike *Seibert*, where the two segments took place approximately 15 minutes apart in the same location at a police station, here Defendant was transported from the location near his vehicle where the first interrogation began and secured in the back of the police cruiser, where he waited for approximately 26 minutes without any questioning being conducted. (*See* R. 34, at 24-25; Govt. Ex. 1, at 20:59:50—21:26:00).

The next factors, the overlapping content of the two statements and the degree to which the interrogator's questions treated the second segment as continuous with the first, also weigh against a finding of continuity. Prior to receiving the *Miranda* warning, Defendant was not responsive to

the officers and his statements were largely not inculpatory. While he appropriately complied with the officer's instructions, Defendant told Officer Shepard that he did not consent to the search of his vehicle, and he maintained that the drugs the officers found were not his. (Govt. Ex. 1, at 20:55:00). It was not until Officer Shepard read Defendant the *Miranda* warning and began transporting him to jail that Defendant began to make incriminating statements, informing Officer Shepard that he had some contraband hidden in his clothing and referring to his narcotics supplier. (R. 34, at 15-17; Govt. Ex. 1, at 21:26:00—21:44:00).

Unlike the circumstances that concerned the Supreme Court in *Seibert*, where officers purposefully asked questions prior to informing defendants of their rights, then went back and confirmed the same information after the defendant received the *Miranda* warning, this situation does not present a circumstance where the initial, unwarned interrogation operated to "thwart *Miranda's* purpose of reducing the risk that a coerced confession would be admitted." *Seibert*, 542 U.S. at 617. *See also United States v. Wooten*, 602 F. App'x 267, 274 (6th Cir. 2015) (applying the *Seibert* factors to find that the statements did not constitute one continuous confession). Rather, a reasonable person in Defendant's shoes could have seen the post-*Miranda* custodial interrogation as a new and distinct experience, and the *Miranda* warning could have made sense as presenting a genuine choice whether to follow up on the earlier admissions. *Ray*, 803 F. 3d at 272.

The *Seibert* factors weigh even more heavily in favor of Detective Jansen's subsequent interrogation of Defendant. Officer Shepard did not take part in the interview. Detective Jansen testified that he had not been present at the scene when Mr. Conway was arrested. The interview occurred in a different location, at the Covington Police Department headquarters, and occurred approximately 45 minutes after Officer Shepard ended the first interrogation and placed Mr. Conway in the police cruiser. (*See* Govt. Ex. 1, at 20:59:00—21:44:00). Detective Jansen read

Defendant his *Miranda* warnings again from a printed card, and asked Defendant Conway whether Defendant understood and wanted to talk to him.  Moreover, Detective Jansen's questions were much more detailed and were not treated as continuous with the earlier questioning conducted by Officer Shepard.  Based upon these factors, under the totality of the circumstances the initial questioning conducted by Officer Shepard did not thwart *Miranda's* purpose of reducing the risk that a coerced confession would be admitted.  *Seibert*, 542 U.S. at 617.  Accordingly, based upon the record the United States has demonstrated by a preponderance of the evidence that the *Miranda* warnings Conway received provided a full and effective warning of his rights and rendered his subsequent waiver valid and his confession admissible.

In addition to being provided a full and effective warning, Conway voluntarily, knowingly, and intelligently waived his right to remain silent during his interrogation with the officers. The burden rests with the United States to establish, by a preponderance of the evidence, that a defendant has voluntarily, knowingly, and intelligently waived his *Miranda* rights.  *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *United States v. Crumpton*, 824 F.3d 593, 606 (6th Cir. 2016); *United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009) ("A specific factual inquiry must be made to determine if, under the totality of the circumstances, the defendant has waived his rights.").

The evidence presented indicates that the waiver was voluntary rather than the product of improper police action. To be voluntarily given, the waiver must have been "the product of deliberate choice rather than intimidation, coercion or deception." *Adams*, 583 F.3d at 467 (citing *Machacek v. Hofbauer*, 213 F.3d 947, 954 (6th Cir. 2000)).  Having received a *Miranda* warning, a defendant may be implied to have waived his right by subsequently responding to questioning by law enforcement. *United States v. Adams*, 583 F.3d 457, 467-68 (6th Cir. 2009); *see also United*

32

*States v. Nichols*, 512 F.3d 789, 798  (6th Cir. 2008) (stating that when a defendant is fully informed of his rights and proceeds to answer questions, this is "as clear an indicia of his implied waiver of his right to remain silent as we can imagine.").  Defendant makes no allegations of  intimidation, coercion or deception in his Motion to Suppress or in his testimony at the evidentiary hearing. Rather, the body camera recordings indicate that Defendant voluntarily chose to offer information during the ride to the jail.

Moreover, the evidence presented indicates that Conway knowingly and intelligently waived his rights to counsel and silence.  A statement is knowingly and intelligently given when "the suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or  to discontinue talking at any time." *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (citing *Colorado v. Spring*, 479 U.S. 564, 547 (1987)). This determination depends upon "the particular  facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). The totality of the circumstances can include such factors as "age, education, and intelligence of the defendant;  whether  the  defendant has been informed of the *Miranda* warnings; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as deprivation of food or sleep."  *Murphy v. Ohio*, 551 F.3d 485, 511 (6th Cir. 2009); *see also United States v. Montgomery*, 621 F.3d 568, 573 (6th Cir. 2010) (examining factors such as the suspect's age,  experience, education, background, and intelligence); *Jackson v. McKee*, 525 F.3d 430, 434 (6th Cir. 2008) (weighing such factors as the defendant's familiarity with the criminal justice system  from prior convictions, whether the defendant appeared to be lucid and sober, whether  the  defendant asked for an attorney, and whether the defendant was able to point to any verbal or  physical threats by law enforcement officers to compel the incriminating statements).

33

Under the totality of the circumstances, Conway's conduct and the relevant factors point to a knowing and intelligent waiver such that he understood the *Miranda* warning and the consequences of waiving those rights.  A defendant's prior experience with the criminal justice system is a consideration in determining whether his waiver was knowing and intelligent.  *See Murphy*, 551 F.3d at 514 (citing *Smith v. Mullin*, 379 F.3d 919, 933 (10th Cir. 2004)).  At the time of the arrest, Defendant Conway was a middle-aged adult who had been familiarized with the criminal justice system from prior convictions, and appeared to be lucid and sober.  Moreover, the record shows no evidence that the law enforcement officers used physical punishment to elicit the statements at issue, that the duration of the questioning was unduly prolonged or repeated, or that the law enforcement officers used threats or physical punishment,  such as deprivation of food or sleep. To the contrary, the body camera recordings indicate that the questioning was short in duration and that Conway was detained for less than a few hours.  Under the totality of the circumstances, the United States has shown by a preponderance of the evidence that Conway's statements were knowingly and intelligently given, and nothing in the record demonstrates a violation of Defendant's constitutional rights.    Accordingly, because Conway voluntarily, knowingly, and intelligently waived his rights, his statements are admissible, and Mr. Conway's Motion to Suppress (R. 25) should be denied.

## III.    CONCLUSION AND RECOMMENDATION

The evidence and testimony presented at the evidentiary hearing, as well as the evidence set forth in the record, demonstrate that Defendant Conway's constitutional rights were not violated such that suppression is warranted.  Accordingly, for the reasons stated herein, **IT IS RECOMMENDED** that Defendant's Motion to Suppress (R. 25) be **denied**.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived.  28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated this 4th day of June, 2018.



Signed By:

*Candace J. Smith*

United States Magistrate Judge

J:\DATA\Orders\criminal cov\2017\17-43 Conway MTSuppress R&R final.docx