**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL ACTION NO. 17-43-DLB-CJS**

**UNITED STATES OF AMERICA**                                                        **PLAINTIFF**


**V.**                    **ORDER ADOPTING REPORT AND RECOMMENDATION**


**DONALD R. CONWAY**                                                              **DEFENDANT**

* * * * * * * * * * * * * * *

This matter is before the Court upon Defendant Donald R. Conway's Motion to Suppress (Doc. # 25), and Magistrate Judge Candace J. Smith's Report and Recommendation ("R&R"), wherein she recommends that Defendant's Motion to Suppress be denied. (Doc. # 35). The Defendant having filed Objections to the R&R (Docs. # 37 and 40),[1] and the Government having responded to the Defendant's Objections (Doc. # 38), the Motion to Suppress is ripe for the Court's review. For the reasons that follow, the Defendant's Objections are **overruled**, the R&R is **adopted**, and Defendant's Motion to Suppress (Doc. # 25) is **denied**.

---

[1]     In addition to the Objections filed by the Defendant's attorney (Doc. # 37), the Defendant has also filed a set of handwritten pro se Objections for the Court to consider. (Doc. # 40). The Court has reviewed the Defendant's handwritten Objections and concludes that the bulk of the Objections are without legal significance—for example, the Defendant objects to Officer Shepard's statement that he ran the Defendant's name in jail tracker and it revealed that the Defendant had a sexual abuse case in Kenton County. (Doc. # 40 at 1). The Defendant's remaining Objections are duplicative of the Objections filed by his attorney, and as such, the two sets of Objections will be addressed in tandem.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 28, 2016, Covington Police Officer Kyle Shepard stopped Defendant Donald R. Conway for a traffic violation in Covington, Kentucky. (Doc. # 25 at 4). Officer Shepard approached Conway and informed him that he was stopped because his front windshield was unlawfully tinted in violation of Ky. Rev. Stat. Ann. § 189.100. *Id.* Conway complied with Officer Shepard's request and provided his identification. (Doc. # 35 at 3).

When Officer Shepard approached Conway's vehicle, he detected the odor of what he believed to be marijuana emanating from the vehicle. *Id.* At the time of the stop, Conway was smoking a Black & Mild cigar, but Officer Shepard testified that the cigar did not smell like it contained any marijuana.[2] *Id.* Officer Shepard did not see any drugs or other contraband in the car in plain view. *Id.* Officer Shepard asked Conway whether he had any drugs or weapons inside of the vehicle or whether anyone had smoked marijuana in the car recently. *Id.* Conway denied having drugs or weapons in the vehicle and denied that anyone had smoked marijuana recently. *Id.*

Officer Shepard returned to his patrol vehicle to check Conway's information. *Id.* at 4. Shortly thereafter, Officer Galvin Adkisson arrived at the scene and briefly conferred with Officer Shepard. *Id.* Officer Adkisson then approached Conway's vehicle on the passenger side. *Id.* Officer Adkisson testified that he smelled what he recognized as marijuana coming from the vehicle. *Id.*

---

[2]    The Defendant's handwritten Objections note that Officer Shepard stated that the Defendant was smoking a Black & Mild cigar, but in state court, Officer Shepard stated that the Defendant was not smoking anything. (Doc. # 40 at 1).

After checking Conway's information, Officer Shepard returned to the vehicle and asked Conway to exit the vehicle. *Id.* After Conway complied, Officer Shepard asked Conway to put his hands on top of the vehicle. *Id.* at 5. Officer Shepard then performed a pat-down of Conway's person. *Id.* At the evidentiary hearing on the Motion to Suppress, Officer Shepard testified that he performs a pat-down every time he gets someone out of a vehicle if he knows that he is going to be searching the vehicle because he does not want anyone with weapons to be sitting behind him while he performs the search. *Id.*

Officer Shepard patted down Conway's pocket area approximately ten times over the course of a few seconds. *Id.* Officer Shepard felt something that he believed to be narcotics, which led him to withdraw the item from Conway's pocket. *Id.* The item was a bag of white powder, which Officer Shepard believed to be either cocaine or fentanyl. *Id.* Upon finding the white powder, Officer Shepard placed Conway under arrest and searched the rest of his person. *Id.* Officer Shepard completed his search of Conway's person and placed Conway in the back of the patrol cruiser. *Id.*

Once the officers secured Conway in the patrol cruiser, Officer Shepard and Officer Adkisson searched Conway's vehicle. *Id.* at 6. During the search of the vehicle, the officers found multiple bags of suspected narcotics, as well as a bag of ammunition. *Id.* at 7. After further searching, the officers also located marijuana in Conway's vehicle. *Id.* Approximately one gram of marijuana was found inside of a leather jacket pocket, wrapped up in paper, and stuffed down into a Black & Mild cigar box. *Id.* Officer Shepard testified that the marijuana that was found was very pungent—stronger than what he typically encounters. *Id.* Officer Adkisson also testified that the seized marijuana had a strong smell. *Id.*

Conway's sister, Tiffany Estes, was present at the scene while Conway's vehicle was searched. *Id.* at 9. Estes testified that she stood "about three to five feet, three to five inches, somewhere in there" from Conway's vehicle and did not smell any marijuana emanating from the car. *Id.* On cross-examination, Estes testified that she was standing a few feet away from Conway's vehicle and never actually leaned inside. *Id.*

After the officers located the marijuana, Officer Shepard returned to the police cruiser and informed Conway of his *Miranda* rights. *Id.* at 7. He further informed Conway that once he arrived at the jail, he would be charged with an additional felony if any other contraband was located during the initial screening and search. *Id.* During the drive to the jail, Conway informed Officer Shepard that he had some contraband hidden in his underwear. *Id.* Officer Shepard pulled over into a parking lot and conducted an additional search of Conway's person, which revealed another bag of narcotics. *Id.*

Officer Shepard testified that he had a conversation with Conway regarding the source of the narcotics and the possibility of cooperating with law-enforcement officers. *Id.* at 8. Based upon that conversation, Officer Shepard called Detective Anthony Jansen, who later interviewed Conway at the Covington Police Department headquarters garage. *Id.* Detective Jansen also read Conway his *Miranda* warnings before he began interviewing Conway. *Id.* Following Detective Jansen's interview, Officer Shepard transported Conway to jail. *Id.* Officer Shepard then applied for a search warrant to search five cellular phones seized during the search of Conway's vehicle. *Id.* at 9.

On November 9, 2017, a federal grand jury returned an Indictment against the Defendant, charging him with possession of a mixture or substance containing heroin, as well as a mixture of substance containing cocaine, with the intent to distribute in violation

of 21 U.S.C. § 841(a)(1).  (Doc. # 1).  The Indictment also charged the Defendant with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1).  *Id.*

On March 29, 2018, the Defendant filed a Motion to Suppress, arguing that the December 28, 2016 warrantless stop and the subsequent search of his vehicle and person violated his constitutional rights.  (Doc. # 25).  After the United States filed its Response (Doc. # 27) and the Defendant filed his Reply (Doc. # 28), Judge Smith held an evidentiary hearing on May 4, 2018 (Doc. # 31), and subsequently issued an R&R, recommending that Defendant's Motion to Suppress be denied.  (Doc. # 35).

The R&R having been objected to (Docs. # 37 and 40), and the United States having responded to said Objections (Doc. # 38), the Motion to Suppress (Doc. # 25) and the R&R (Doc. # 35) are ripe for the Court's review.

## II.     ANALYSIS

### A.     Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation.   "The magistrate judge must promptly conduct the required proceedings and enter on the record a recommendation for disposing of the matter, including any proposed finding of fact."  Fed. R. Crim. P. 59(b)(1).  If a party files timely objections to the recommendation, the district court must consider those objections *de novo* and "accept, reject, or modify the recommendation."  Fed. R. Crim. P. 59(b)(3). Failure to object to a Magistrate Judge's findings or conclusions results in waiver of those objections.  Fed. R. Crim. P. 59(b)(2).

Moreover, the objections must be specific. "[V]ague, general or conclusory objections" are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). Therefore, "an 'objection' that does nothing more than state a disagreement with a magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *United States v. Vanover*, No. 2:10-cr-14-DLB, 2017 WL 1356328, *1 (E.D. Ky. Apr. 11, 2017) (quoting *VanDiver v. Martin*, 304 F. Supp. 3d 934, 938 (E.D. Mich. 2004)).

The Defendant has raised multiple objections to Magistrate Judge Smith's R&R. (Docs. # 37 and 40). The Defendant's first four objections center around Judge Smith's finding that the officers had probable cause to search the Defendant's vehicle. (Doc. # 37 at 1-4). First, the Defendant objects to Judge Smith's finding that Officer Shepard and Officer Adkisson actually smelled marijuana emanating from the Defendant's vehicle. *Id.* at 1. Second, the Defendant objects to the evidence Judge Smith used to support the finding that Officer Shepard and Officer Adkisson smelled marijuana. *Id.* at 2. Third, the Defendant objects to Judge Smith's credibility determination, which concluded that Officer Shepard's and Officer Adkisson's testimony was more credible than the testimony of Tiffany Estes, a witness—and the Defendant's sister—who was also at the scene. *Id.* at 3. And fourth, the Defendant objects to Judge Smith's finding that the officer's had "no incentive to lie," arguing that "there could be negative consequences to their careers in law enforcement if they were untruthful." *Id.* at 4.

The Defendant's fifth, sixth, and seventh objections focus on Judge Smith's recommendation that the Court decline to suppress evidence seized during the frisk of

the Defendant's person, despite having found that the frisk was unconstitutional. *Id.*
Specifically, Judge Smith recommended that suppression of such evidence was
unwarranted because the evidence inevitably would have been discovered. *Id.* The
Defendant objects to Judge Smith's conclusion, arguing that because the officers did not
actually smell marijuana, the search of the car was unconstitutional, and thus there would
not have been an inevitable discovery of the items on the Defendant's person pursuant
to a search incident to arrest. *Id.* The Defendant further objects to Judge Smith's alleged
failure determine whether the officers exceeded the permissible scope of a search for
weapons. *Id.* at 5.

The Defendant's eighth and ninth objections concern the validity of the search
warrant for the Defendant's five cellular phones, which were seized during the search of
the vehicle. *Id.* In addition to contesting Judge Smith's finding that the search warrant
was sufficiently particular, the Defendant also takes issue with Judge Smith's finding that
"a reasonably well-trained officer would not have known that the search of his cell phones
was illegal," and claims that Leon's good-faith exception is inapplicable to the case at bar.
*Id.* at 5.

The Defendant's tenth and final objection is merely a general objection to Judge
Smith's ultimate recommendation that the Defendant's Motion to Suppress be denied. *Id.*
Each of the Defendant's Objections will be addressed in turn.

**B.      The search of Conway's vehicle was supported by probable cause.**

The Fourth Amendment protects the "right of the people to be secure in their
persons, houses, papers, and effects, against unreasonable searches and seizures."
U.S. Const. amend. IV. The Supreme Court has consistently distinguished between the

need for a warrant to search for contraband concealed in "a dwelling house or similar place" and the need for a warrant to search for contraband concealed in a movable vessel. *See Carroll v. United States,* 267 U.S. 132 (1925); *see also Boyd v. United States,* 116 U.S. 616 (1886). In *Carroll,* the Supreme Court established an exception to the warrant requirement for moving vehicles, when it recognized "a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Carroll*, 267 U.S. at 153. Thus, the Supreme Court held that warrantless search of an automobile, based upon probable cause to believe that the vehicle contained evidence of crime in the light of an exigency arising out of the likely disappearance of the vehicle, did not contravene the Fourth Amendment's warrant requirement. *Id.* at 158-159.

The Sixth Circuit has repeatedly held that when an officer detects marijuana emanating from a vehicle during a lawful stop, the officer has probable cause to search the vehicle.[3] *See United States v. Garza*, 10 F.3d. 1241, 1245 (6th Cir. 1993); *see also United States v. Crumb*, 287 F. App'x 511, 514 (6th Cir. 2008) (noting that the Sixth Circuit has "followed *Garza* consistently in holding that the detection of a narcotic's odor, by itself is sufficient to establish probable cause to conduct a lawful search of a vehicle). The Defendant does not contest that the smell of marijuana emanating from a vehicle may establish probable cause for a search, instead, Defendant objects to Judge Smith's

---

[3]     The Defendant has not objected to Judge Smith's finding that the traffic stop was lawful.

finding that the officers actually smelled marijuana emanating from the Defendant's vehicle.

### 1.    Judge Smith's Credibility Determination

The bulk of Defendant's objections pertain to Judge Smith's finding that the officers' testimony that they smelled marijuana emanating from the Defendant's vehicle was credible.  The Defendant points to the fact that Officer Shepard stated "at least three or four times during the stop that it smelled like someone had been smoking marijuana." (Doc. # 37 at 1).  Yet, what the officers ultimately discovered was fresh marijuana, not burnt marijuana.[4]  *Id.*  The Defendant also points to the fact that Tiffany Estes, who was also at the scene, testified that she could smell the Black & Mild Cigar, but could not smell any marijuana.  *Id.* at 2.  Thus, the Defendant takes issue with Judge Smith's conclusion that the officers' testimony was more credible than the testimony of Tiffany Estes.  *Id.* at 3.

The Defendant also contests Judge Smith's finding that the testimony of Officer Adkisson and his body-camera recording was "particularly persuasive."  *Id.*  Specifically, the Defendant claims that Officer Adkisson's testimony was contradictory because he testified that he could not smell the Defendant's cigar, but could smell the fresh marijuana in the Defendant's jacket pocket.[5]  *Id.* at 3.  Lastly, the Defendant objects to Judge Smith's finding that the "officers had no incentive to lie," arguing that there "could be negative consequences to their careers in law enforcement in they were untruthful."  *Id.* at 4.  The Defendant argues that there is evidence that Officer Shepard has claimed to smell

---

[4]    The Defendant's handwritten Objections also point out this alleged discrepancy.  (Doc. # 40 at 1).

[5]    Both officers' body cameras show the Defendant smoking a cigar.  *Id.*

x

marijuana during previous traffic stops, yet failed to find any during the subsequent searches. *Id.*

A district court reviews the objected-to portions of a R&R *de novo*. *See United States v. Raddatz*, 447 U.S. 667, 681-81 (1980). When an objection challenges the Magistrate Judge's credibility determination, the district court has discretion to decide whether to rehear the evidence presented at the suppression hearing. *Id.* at 680-81. The Defendant's first four Objections take issue with the R&R's conclusions regarding credibility. Therefore, the Court will review that portion of the R&R. The Magistrate Judge, as the fact-finder who sees and hears the witnesses, is uniquely situated to assess the credibility of witnesses. Thus, this Court must "accord[ ] great deference to such credibility determinations." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). In this case, a review of the R&R reveals that such deference is warranted and that a rehearing is unnecessary.

In the R&R, Judge Smith found that the evidence demonstrates that the officers smelled marijuana emanating from the vehicle. (Doc. # 35 at 14). Judge Smith found that the officers' body-camera recordings showed "contemporaneous statements and reactions from the officers supporting their testimony that they smelled marijuana." *Id.* In reviewing the body-camera recordings, Judge Smith found that "the recording demonstrates that the officers did not know the location of the marijuana when the search began; Officer Adkisson's contemporaneous reactions as he neared the location of marijuana indicate that he was reacting to a smell." *Id.* Judge Smith found this type of "contemporaneous reaction" to be "credible and less likely to be feigned." *Id.* In addition

to the officers' reactions, Judge Smith found it persuasive that both officers testified that the marijuana was particularly pungent and strong in smell. *Id.* at 15.

During the evidentiary hearing, Tiffany Estes—the Defendant's sister—testified that she smelled only the Black & Mild cigar, and not marijuana, emanating from the Defendant's vehicle. *Id.* Faced with this conflicting testimony, Judge Smith determined that the officers were more credible than Tiffany Estes for two reasons. First, in weighing the conflicting testimony, Judge Smith found that there was no evidence that the officers were motivated by bias and further found that the officers had incentive to tell the truth because there would be negative consequences in their careers in law enforcement if they were untruthful. *Id.* Second, Judge Smith found that Officer Adkisson and Officer Shepard were more credible than Tiffany Estes because she testified that she was standing several feet away and did not lean into the Defendant's vehicle, whereas, Officer Shepard smelled the marijuana upon leaning into the Defendant's vehicle. *Id.*

The Court finds that Judge Smith carefully considered the witnesses' credibility and reasonably chose to accept the law-enforcement officers' version of events over Tiffany Estes's. Because "[c]redibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted unless … [the district court] finds a reason to question the magistrate judge's assessment," this Court gives Judge Smith's credibility assessment great weight. *United States v. Johnson*, No. 10-cr-20176, 2011 WL 3844194, at *2 (W.D. Tenn. Aug. 30, 2011). Put simply, Judge Smith based her credibility determination on sufficient evidence in the record, considered the appropriate evidence, and the Defendant has presented no reason for this Court to second-guess that assessment. *See United States v. Gray*, 182 F. App'x 408, 411 (6th

Cir. 2006); *Peevler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001); *United States v. Solomon*, No. 6:13-cr-40-GFVT-HAI, 2015 WL 5474395 (E.D. Ky. Sept. 17, 2015) (finding that the U.S. Magistrate Judge "appropriately weighed what the witnesses had to gain or lose from their testimony.").

### C. Suppression of the evidence is unwarranted because it would have inevitably been discovered.

#### 1. Inevitable discovery of the evidence

When an officer makes a Terry stop, he may also perform a precautionary search—known as a "frisk" or "pat-down"—whenever he has a reasonable suspicion that the person searched may be armed and dangerous. *United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016); *United States v. Pendleton*, No. 3:15-cr-116-CRS-4, 2017 WL 2722305, at *6 (W.D. Ky. June 23, 2017). Reasonable suspicion is based upon the totality of the circumstances and exists if a reasonably prudent person would be warranted in the belief that his safety or that of others was in danger. *Id.* (citing *United States v. Noble*, 762 F.3d 509, 521-22 (6th Cir. 2014)).

Officer Shepard testified that he performs a pat-down as a matter of course, "[e]very time I get someone out of a vehicle, if I know I'm going to be searching the vehicle, [as] typically my back is going to be to the people that I get out of the vehicle." (Doc. # 35 at 17). Officer Shepard reasoned that he performed the pat-downs "[j]ust for officer safety, I don't want anybody with weapons sitting behind me while I'm doing that." *Id.* Judge Smith found that, on its face, "Officer Shepard's practice of conducting a pat-down every time he conducts a vehicle search fails to comport with the Fourth Amendment." *Id.* Judge Smith further found that Officer Shepard's actions failed to comport with the Fourth Amendment, reasoning that Officer Shepard "lacked reasonable suspicion in the

form of a particularized and objective basis for suspecting that [the Defendant] was armed and dangerous." *Id.* The Defendant's "mere presence in a vehicle which Officer Shepard believed was connected to drug trafficking," Judge Smith concluded, "did not provide reasonable suspicion to believe that [the Defendant] was armed and dangerous." *Id.* at 18.

Despite having found that the initial search of the Defendant's person was conducted in violation of the Fourth Amendment, Judge Smith determined that suppression was unwarranted under the circumstances. *Id.* Put simply, Judge Smith reasoned that because the officers had probable cause to arrest and search the Defendant's vehicle, the evidence found on the Defendant's person would have inevitably been discovered during a search incident to arrest. *Id.* at 19. The Court agrees with Judge Smith's reasoning.

"A traffic stop is reasonable under the Fourth Amendment where the stop was both proper at its inception and 'reasonably related in scope to the circumstances ... [that] justified the ... [stop] in the first place.'" *United States v. Garrido–Santana,* 360 F.3d 565, 570–71 (6th Cir. 2004) (quoting *United States v. Freeman,* 209 F.3d 464, 466 (6th Cir. 2000)). An officer is permitted to make an investigative stop when he has "probable cause to believe a civil traffic violation has occurred." *Gaddis ex rel. Gaddis v. Redford Twp.,* 364 F.3d 763, 771 n.6 (6th Cir. 2004) (citing *Whren v. United States,* 517 U.S. 806, 810 (1996)). "[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Davis,* 430 F.3d 345, 352 (6th Cir. 2005) (citing *United States v. Bradshaw,* 102 F.3d 204, 210 (6th Cir. 1996)). Moreover,

when an officer conducts a traffic stop, he is permitted to make a limited search of the individual's "outer clothing for weapons … to protect both the officer and the public." *Arizona v. Johnson,* 555 U.S. 323, 330 (2009) (quoting *Terry v. Ohio,* 392 U.S. 1, 23-24 (1968)). Such pat-downs are necessary for an officer's safety and do not violate the Fourth Amendment so long as the officer has a reasonable suspicion that the suspect is armed and dangerous. *Pendleton*, 2017 WL 2722305, at *6.

It is undisputed that Officer Shepard had probable cause to make the initial stop because of the illegal window tint on the Defendant's vehicle. Upon pulling the Defendant over, Officer Shepard smelled marijuana and asked the Defendant to step out of the vehicle, where he then performed what he believed to be a pat-down of the Defendant. However, because the evidence does not support a finding that Officer Shepard initiated the pat-down because of a reasonable belief that the Defendant was armed and dangerous, Officer Shepard conducted an unlawful search of the Defendant's person in violation of the Fourth Amendment. *United States v. Flores*, 30 F. Supp. 3d 599, 605 (E.D. Ky. 2014).

Nonetheless, the constitutional violation does not warrant suppression of the evidence—namely narcotics—found on the Defendant's person. "[W]here 'tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered.'" *United States v. Witherspoon,* 467 F. App'x 486, 490 (6th Cir. 2012) (quoting *Murray v. United States,* 487 U.S. 533, 539 (1988)). This rule applies "(1) when an 'independent, untainted investigation ... inevitably would have uncovered the same evidence'; or (2) when there exist 'other compelling facts establishing that the disputed evidence inevitably would have

been discovered.'" *Id.* (quoting *United States v. Kennedy,* 61 F.3d 494, 499 (6th Cir. 1995)).

The Court has determined that because the officers smelled marijuana emanating from the Defendant's vehicle, the officers had probable cause to search the vehicle.[6]  The search of the Defendant's vehicle yielded marijuana, as well as several grams of cocaine and heroin.  (Doc. # 35 at 19).  As such, the search provided reasonable grounds for the officers to believe that the Defendant was engaged in drug trafficking sufficient to justify an arrest.  Incident to the Defendant's arrest, the officers would be permitted to perform a search of the Defendant's person for any other contraband or evidence related to drug-trafficking.  *United States v. Kaye*, 492 F.2d 744, 746 (6th Cir. 1974) ("incident to making a lawful custodial arrest, a full search of the person may be made without a warrant.").  As such, the officers would have inevitably discovered the white powder in the Defendant's pockets.  Accordingly, suppression of the evidence found on the Defendant's person is unwarranted.

### 2.    Discussion of the scope of the search is unnecessary.

The Defendant objects to Judge Smith's lack of discussion regarding the scope of the Officer Shepard's search of the Defendant's person.  Specifically, the Defendant argues that because Officer Shepard's search exceeded the permissible scope of a search for weapons, the white powder should be suppressed.  (Doc. # 37 at 5).  The Defendant is mistaken.  Having found that the search of Defendant's person violated the

---

[6]    Sufficient probable cause for the search of the Defendant's vehicle existed solely because of the officers' smell of marijuana.  *See United States v. Garza*, 10 F.3d. 1241, 1245 (6th Cir. 1993); *see also United States v. Crumb*, 287 F. App'x 511, 514 (6th Cir. 2008).  Therefore, the evidence found on the Defendant's person during the unconstitutional frisk does not impact the existence of probable cause.

Fourth Amendment because Officer Shepard lacked reasonable suspicion that the Defendant was armed and dangerous, discussion of the scope of the search would have been an unnecessary exercise in redundancy and merely duplicative of the conclusion that a constitutional violation had occurred.

As explained by the Sixth Circuit in *Pacheco*, 841 F.3d at 390, the first step in determining the constitutionality of a *Terry* frisk is whether the officer "has 'reasonable suspicion' that the person searched may be armed and dangerous." (citing *Knowles v. Iowa*, 525 U.S. 113, 118 (1998)). Having found that Officer Shepard lacked reasonable suspicion to perform the pat-down search of the Defendant, Judge Smith concluded that the search violated the Fourth Amendment. A finding that the pat-down search also exceeded the permissible scope of a *Terry* frisk—or, on the contrary, did not exceed the permissible scope—would not change the ultimate conclusion, and thus, need not be addressed by the Court.

### D. The search warrant did not lack particularity.

The Fourth Amendment guarantees the right of liberty against unreasonable searches and seizures by providing that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and *particularly* describing the place to be searched, and the persons or things to be seized." *United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003) ("It is well-settled that items to be seized pursuant to a search warrant must be described with particularity to prevent the seizure of one thing under a warrant describing another violation of the Fourth Amendment."). The Fourth Amendment generally requires police to obtain a warrant before searching the digital information stored on a cellular phone, even when the phone is seized incident to arrest. *Riley v.*

*California*, 134 S. Ct. 2473, 2493 (2014).   In applying *Riley*, the Sixth Circuit has consistently rejected most particularity challenges.  *See United States v. Bass*, 785 F.3d 1043, 1049-50 (6th Cir. 2015).

The particularity requirement may be satisfied through the express incorporation or cross-referencing of a supporting affidavit that describes the items to be seized, even though the search warrant contains no such description.  *Ellison v. Balinski,* 625 F.3d 953 (6th Cir. 2010).  "[T]he degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought."  *United States v. Greene,* 250 F.3d 471, 477 (6th Cir. 2001) ("A search warrant must particularly describe the things to be seized, but the description, whose specificity will vary with the circumstances of the case, will be valid if it is as specific as the circumstances and the nature of the activity under investigation permit.")

Judge Smith reasoned that the warrant, along with the affidavit, were sufficient to satisfy the particularity requirement.  (Doc. # 35 at 25).   Judge Smith pointed to three justifications for her recommendation.  *Id.*  First, Judge Smith reasoned that the Defendant failed to demonstrate that evidence was seized from the cellular phones pursuant to the overbroad portion of the warrant, namely the portion of the warrant permitting the search of "any additional information."  *Id.* at 23.  Second, Judge Smith reasoned that where the warrant was silent, the affidavit established that the search was part of a narcotics-trafficking investigation and authorized a search of the five seized cellular phones for text messages, phone numbers in contacts and call logs, and photographs.  *Id.* at 24.  Third, Judge Smith reasoned that at the time of the seizure, the officers could not have known

where this information was located in the phone or in what format.  *Id.*  Thus, Judge Smith found that the scope of the warrant was reasonable under the circumstances.  *Id.*

The Defendant objects to Judge Smith's ultimate finding that the search warrant did not lack particularity.  Specifically, the Defendant takes issue with Judge Smith's first justification, arguing that the search warrant authorized "a search of text messages, phone numbers, call logs, and any additional information, including photos," but videos were also seized pursuant to the overbroad portion of the search warrant.  (Doc. # 37 at 5).  The Defendant's objection is without merit.

In this case, the warrant sought evidence relating to the Defendant's involvement in narcotics trafficking.  (Doc. # 25-4 at 5).  The affidavit set forth a substantial basis to believe that such evidence existed on the five cellular phones seized from the Defendant, "but was unclear as the particular *format* on which the evidence existed."  *Bass*, 785 F.3d at 1049.  In *Bass*, the warrant authorized the search "for any records of communication, indicia of use, ownership or possession, including electronic calendars, address books, e-mails, and chat logs."  *Id.*  The Sixth Circuit determined that the broad scope of the warrant was reasonable under the circumstances because "at the time of the seizure … the officers could not have known where this information was located in the phone or in what format."  *Id.*  The same holds true in this case.  While the search warrant did not specifically list videos on the cellular phones as an item subject to search, "at the time of the seizure … the officers could not have known where [evidence of drug trafficking] was located in the phone or in what format."  *Id.*  As such, the Court finds that the particularity requirement is satisfied and thus, that the warrant was not overbroad.

**E.      The good-faith exception to the warrant requirement applies.**

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure."  *Illinois v. Krull*, 480 U.S. 340, 347 (1987).  If the evidence was "obtained in objectively reasonable reliance" on the "subsequently invalidated search warrant," however, it should not be suppressed.  *United States v. Leon*, 468 U.S. 897, 922 (1984).  For the exception to apply, the affidavit must contain "a minimally sufficient nexus between the illegal activity and the place to be searched."  *United States v. Carpenter*, 360 F.3d at 591, 596 (6th Cir. 2004).  A police officer does not "manifest objective good faith in relying on a warrant" if the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Id.* at 595 (quoting *Leon*, 468 U.S. at 923).

Judge Smith found that even if the Defendant could demonstrate that the search warrant was unconstitutionally broad, the good-faith exception would still permit the introduction of the evidence because a reasonably well-trained officer would not have known that the search was illegal.  (Doc. # 35 at 25).  The Defendant objects to Judge Smith's conclusion, arguing that because the warrant did not specify that officers were to search for evidence relating to drug trafficking, the warrant was so facially deficient that it could not reasonably be presumed valid.  *Id.*  The Court disagrees.

It is true that the warrant did not contain information specifying the crime for which evidence was to be obtained.  However, the affidavit attached to the warrant is filled with "facts connecting the [cellular phones] to the alleged drug dealing activity."  *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016).  Therefore, the affidavit is not "so lacking in indicia

of probable cause as to render official belief in its existence entirely unreasonable." *Carpenter*, 360 F.3d at 595.

Judge Smith pointed to several pieces of evidence in the affidavit that connect the cellphones to the Defendant's alleged drug trafficking. (Doc. # 35 at 26). Of particular importance here, the affidavit contained a description of the investigation, a description of the recovery of the five cellular phones, a description of the large quantity of cocaine and heroin found inside the Defendant's vehicle, and also relayed information about the Defendant's prior convictions for trafficking in narcotics obtained from a criminal-history check. (Doc. # 25-4 at 4-5). In addition, the affidavit detailed the Defendant's admission that he had more narcotics on his person after his arrest, and described the results of that search: individually wrapped baggies of heroin. *Id.* Importantly, the affidavit also noted that Officer Shepard sought to "search the cell phones to further his" narcotics-trafficking investigation. *Id.* Accordingly, the Court finds that the good-faith exception applies to the evidence seized from the Defendants' cellular phones, and therefore, suppression of such evidence is unwarranted.

## F. The Defendant's objection to Judge Smith's ultimate recommendation amounts to no objection at all.

The Defendant's tenth and final objection contests Judge Smith's ultimate recommendation that the Motion to Suppress be denied. (Doc. # 37 at 5) (the Defendant "objects to the magistrate judge's ultimate recommendation that the Motion to Suppress be denied."). The Court overrules the Defendant's objection because it is vague. Objections must be specific. "[V]ague, general or conclusory objections" are "tantamount to a complete failure to object." *Cole,* 7 F. App'x at 356. Therefore, the Defendant's tenth objection, which "does nothing more than state a disagreement with [the] magistrate

judge's suggested resolution … is not an 'objection' as that term is used in this context."

*Vanover*, 2017 WL 1356328, at *1.

III.    **CONCLUSION**

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)    The Report and Recommendation of the United States Magistrate Judge (Doc. # 35) is hereby **adopted** as the findings of fact and conclusions of law of the Court;

(2)    Defendant's Objections (Docs. # 22 and 40) are hereby **overruled** as set forth herein;

(3)    Defendant's Motion to Suppress (Doc. # 25) is hereby **denied in full**;

(4)    The time period between the filing of Defendant's Motion to Suppress on March 29, 2018 and this Order, totaling 110 days, is **excluded** from the provisions of the Speedy Trial Act pursuant to 18 U.S.C. 3161(h)(1)(D); and

(5)    This matter is scheduled for a **Status Conference** on **Wednesday, July 25, 2018 at 9:30 a.m. in Covington**.  The Defendant shall be present for the conference and the parties shall be prepared to schedule the case for trial at that conference.

This 17th day of July, 2018.



Signed By:

*David L. Bunning*    DB

United States District Judge