**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

CRIMINAL ACTION NO. 17-43-DLB-CJS

UNITED STATES OF AMERICA                                          PLAINTIFF

vs.            **FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND VERDICT**

DONALD R. CONWAY                                                 DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

This matter came before the Court for a bench trial, which commenced on August 14, 2018. (Doc. # 56). The trial was then continued until August 21, 2018, at which time proceedings resumed and concluded. (Doc. # 50). At the conclusion of the trial, the Court took the matter under advisement for deliberation and decision. (Doc. # 57). At the request of Defendant (Doc. # 43), the Court herein provides its written decision pursuant to Rule 23(c) of the Federal Rules of Criminal Procedure.

## II. PROCEDURAL HISTORY

This criminal action stems from a traffic stop, subsequent search, and resulting discovery of controlled substances on December 28, 2016 in Covington, Kentucky. As a result, a federal grand jury returned an Indictment against the Defendant, Donald R. Conway, on November 9, 2017. (Doc. # 1). The Indictment alleges that on December 28, 2016, Defendant Conway: (1) "did knowingly and intentionally possess a mixture or substance containing a quantity of heroin, a Schedule I controlled substance, with the intent to distribute some amount of it, all in violation of 21 U.S.C. § 841(a)(1)" (Count

One); (2) "did knowingly and intentionally possess a mixture or substance containing a quantity of cocaine, a Schedule II controlled substance, with the intent to distribute some amount of it, all in violation of 21 U.S.C. § 841(a)(1)" (Count Two); and "having been convicted of a crime punishable by imprisonment for a term exceeding one year, that is, a felony, did knowingly possess in and affecting interstate and foreign commerce, fourteen rounds of assorted ammunition, all in violation of 18 U.S.C. § 922(g)(1)" (Count Three). *Id.*

On March 29, 2018, the Defendant filed a Motion to Suppress, arguing that the warrantless stop and subsequent search of his vehicle and person violated his constitutional rights. (Doc. # 25). After the United States filed its Response (Doc. # 27) and the Defendant filed his Reply (Doc. # 28), an evidentiary hearing was held before United States Magistrate Judge Candace J. Smith. (Doc. # 31). On July 17, 2018, the Court entered an Order adopting the Magistrate Judge's Report and Recommendation (Doc. # 35), and denying in full Defendant's Motion to Suppress. (Doc. # 41). Specifically, the Court found that, *inter alia*, the search of the vehicle was supported by probable cause because the officers who stopped Defendant detected marijuana emanating from the vehicle in the course of a lawful traffic stop. (Doc. # 41 at 8-9).

Defendant waived his right to trial by jury in writing on July 26, 2018. (Docs. # 42 and # 43). The Government consented, and the Court approved the same as required by Rule 23 of the Federal Rules of Criminal Procedure, allowing the case to be tried by the Court. *Id.* The matter came before this Court for a bench trial on August 14, 2018. (Doc. # 56). At that time, the Government moved to dismiss Count Three of the Indictment, which charged Defendant with possession of ammunition in violation of 18

U.S.C. § 922(g)(1). The Government's oral motion was granted, and the bench trial commenced on Counts One and Two. Trial concluded on August 21, 2018, and the Court took the matter under advisement pending a written decision pursuant to Rule 23(c) of the Federal Rules of Criminal Procedure. (Doc. # 57). The Court, having considered the testimony, exhibits, and all evidence properly introduced at trial, renders its verdict, and in accordance with Rule 23(c) of the Federal Rules of Criminal Procedure, sets forth its specific findings of fact and conclusions of law herein.

### III. FINDINGS OF FACT

On December 28, 2016, Covington Police Officer Kyle Shepard stopped Defendant Donald R. Conway for a traffic violation in Covington, Kentucky. Specifically, the front windshield of Defendant's vehicle was tinted in violation of Ky. Rev. Stat. Ann. § 189.100 such that the driver was not visible to oncoming traffic. After making the stop, Officer Shepard approached Defendant and explained that he was stopped because of the unlawful window tint. *See* (Gov't Ex. S1, at 20:50:13).[1] When Officer Shepard approached Defendant's vehicle, he detected the odor of marijuana emanating from the vehicle. *See id.* at 20:51:57.

Defendant provided his license and registration and informed Officer Shepard that he was the owner of the vehicle. *See* (Gov't Ex. 11). Officer Shepard returned to his patrol vehicle to check Defendant's information. Shortly thereafter, Covington Police Officer Galvin Adkisson arrived at the scene to provide backup. *Id.* at 20:52:44. Officer

---

[1] The City of Covington police officers were equipped with body cameras during the stop. The body-camera recordings are time stamped in a military-time format, reflecting a global standard time controlled by a third-party vendor to ensure uniform recordkeeping. Thus, while the time stamp on the body-camera videos does not reflect Eastern Daylight Savings Time, it is nonetheless accurate.

Adkisson approached Defendant's vehicle on the passenger side and also smelled marijuana coming from the vehicle. (Gov't Ex. S2 at 20:55:20). Defendant then began to tear the window-tint film off of his vehicle's windshield in the presence of the two officers. (Gov't Ex. S1 and Gov't Ex. S2 at 20:55:00). Officer Shepard asked Defendant to exit the vehicle, and performed a pat-down of Defendant's person.[2] *Id.* Officer Shepard found two knotted plastic bags from Conway's front right pocket—one containing approximately 9.753 grams of a white powder found to contain cocaine, and the other containing approximately 0.720 grams of a brown powder found to contain heroin. (Gov't Ex. S1 at 20:55:58; Gov't Ex. S2 at 20:57:20; Gov't Ex. 5; Gov't Ex. 6; Gov't Ex. 12). Officer Shepard also located approximately $262.00 in U.S. Currency on Defendant's person. (Gov't Ex. 10). Upon finding the bags of powder, Officer Shepard placed Defendant under arrest, searched the rest of his person, and placed Defendant in the back of the patrol cruiser. (Gov't Ex. S1, at 20:59:50).

Once Defendant was secured in the patrol cruiser, the officers searched Defendant's vehicle. (Gov't Ex. S1 and Gov't Ex. S2 at 21:05:45). The vehicle was cluttered with papers, clothing, DVDs, and numerous other items, including a spray can of Ozium smoke-eliminating air sanitizer sitting on the driver's seat. (Gov't Ex. S1 at 21:08:35). During the search of the vehicle, the officers found a mason jar filled with knotted plastic bags of controlled substances in the center console; the bags were filled with approximately 6.687 grams and 5.533 grams, respectively, of a brown powder found to contain heroin. (Gov't Ex. S1 at 21:06:29; Gov't Ex. 2.1; Gov't Ex. 2.2; Gov't Ex. 12).

---

[2] While the Court previously found that the pat down of Defendant's person was unconstitutional, the controlled substances found in Defendant's pockets are nonetheless admissible pursuant to the inevitable discovery doctrine. (Doc. # 41 at 12-15).

The officers also found a plastic bag filled with .38 special cartridges of ammunition as well as a cellular phone in the center console. (Gov't Ex. 2; Gov't Ex. 7). A total of five cellular phones were found during the search of the vehicle. (Gov't Exs. 8a—8e). Officer Adkisson located approximately 1.081 grams of marijuana wrapped in paper and tucked into the pocket of a jacket located in the rear passenger seat. (Gov't Ex. S2 at 21:11:48; Gov't Ex. 3; Gov't Ex. 12).

After the officers located the marijuana and other controlled substances in Defendant's vehicle, Officer Shepard returned to the police cruiser and informed Defendant of his *Miranda* rights. (Gov't Ex. S1 at 21:25:38). Officer Shepard further informed Defendant that once he arrived at the jail, he would be charged with an additional felony if the jail staff found any other controlled substances during the initial screening and search. During the drive to the jail, Defendant informed Officer Shepard that he had additional controlled substances hidden in his underwear. (Gov't Ex. S1 at 21:36:25). Officer Shepard pulled over into a parking lot and conducted an additional search of Defendant's person. *Id.* at 21:37:20. Officer Shepard found three knotted plastic bags inside of a sandwich bag stuffed into Defendant's underwear. (Gov't Ex. 4). The first bag was filled with approximately 10.955 grams of a brown powder found to contain heroin. (Gov't Ex. 4.1; Gov't Ex. 12). The second bag was filled with approximately 8.480 grams of a white powder solid material found to contain cocaine. (Gov't Ex. 4.2A; Gov't Ex. 12). The third bag was filled with approximately 7.211 grams of a white powder solid material found to contain cocaine. (Gov't Ex. 4.2B; Gov't Ex. 12).

Officer Shepard then had a conversation with Defendant regarding the source of the controlled substances and the possibility of cooperating with law-enforcement officers.

(Gov't Ex. S1 at 21:39:50).  Based upon that conversation, Officer Shepard contacted Detective Anthony Jansen, who subsequently interviewed Defendant at the Covington Police Department headquarters garage.  (Gov't Ex. S1 at 21:48:00).  Detective Jansen again informed Defendant of his *Miranda* rights, and Defendant indicated that he understood.  Detective Jansen then asked Defendant what was going on; Defendant responded that there had been a traffic stop.  When Detective Jansen asked what had been found during the stop, Defendant indicated crack, cocaine, and heroin.  Defendant then identified his source of supply as a Puerto Rican male named "E" or Elmer.  Defendant also informed Detective Jansen that he had purchased 300 grams of cocaine for approximately $20,000.00 in the spring or summer of 2016, as well as approximately 100 grams of heroin for $7,000.00.  Further, Defendant informed Detective Jansen that he was preparing to meet with another individual named Matt in the Florence, Kentucky area to discuss obtaining methamphetamine.  Detective Jansen requested the contact information for these individuals, and Defendant directed Detective Jansen to phone numbers on his cellular phone that he claimed belonged to the suppliers he mentioned.

The December 28, 2016 stop was not the first occasion Defendant was found to possess controlled substances during a traffic stop.  On March 11, 2011, Defendant pleaded guilty to possession of, and trafficking in, heroin and cocaine in the Hamilton County Court of Common Pleas in Ohio.  (Gov't Ex. 13).  Specifically, the State of Ohio had charged that during a February 3, 2010 traffic stop, officers observed a plastic baggie sticking out of Defendant's right jacket sleeve.  *Id.*  The baggie was removed and was found to contain both heroin and crack cocaine.  *Id.*  Defendant was charged with possession of between one and five grams of crack cocaine and two counts of possession

of less than one gram of heroin. *Id.* The controlled substances recovered were found to be prepared for distribution. *Id.*

## IV. CONCLUSIONS OF LAW

To find the Defendant guilty of knowingly and intentionally possessing a controlled substance with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), the Government must prove, beyond a reasonable doubt, that the defendant: (1) knowingly, (2) possessed a controlled substance, (3) with the intent to distribute. *United States v. Wettstain*, 618 F.3d 577, 585 (6th Cir. 2010) (citing *United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006)). "[D]rug type and quantity are irrelevant to the mens rea element of a section 841(a) offense, which requires nothing more than a defendant's specific intent to possess or distribute a controlled substance." *Wettstain*, 618 F.3d at 586. A § 841(a)(1) conviction can be based upon a showing of either actual or constructive possession. *Id.* "Constructive possession requires evidence supporting the conclusion that the defendant had the ability to exercise knowing 'dominion and control' over the items in question." *Id.* And the intent to distribute drugs can be inferred from the large quantity involved. *Id.* "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *Id.* at 587.

Based upon the evidence adduced during the bench trial, the Court concludes beyond a reasonable doubt that Defendant knowingly possessed with the intent to distribute the controlled substances seized from his vehicle on December 28, 2016. First, the scienter element alleged in Counts One and Two of the Indictment is satisfied. During the stop, Defendant began tearing the window tint off of his windshield, providing

circumstantial evidence that he intended to persuade Officer Shepard to let him go once the traffic citation was issued, and without pursuing the matter further. Throughout the course of his interactions with Officer Shepard during the subsequent search, Defendant indicated that he was concerned about the officers finding what was in his vehicle. Furthermore, Defendant identified the bags of powder found in the course of the search as cocaine and heroin to Officer Shepard, after initially lying to Officer Shepard when he was asked whether there were any drugs in the vehicle. Defendant also offered to cooperate with Officer Shepard, identified the source of his supply, and admitted to purchasing the cocaine and heroin from his supplier for several thousand dollars.[3] All of these factors, taken together, prove beyond a reasonable doubt that Defendant acted "knowingly."

Next, the United States has proven beyond a reasonable doubt that Defendant was in possession of the controlled substances, as alleged in Counts One and Two of the Indictment. The substances seized from Defendant's person and vehicle, and subsequently offered into evidence during trial, were tested by Susan Vanlandingham, a Forensic Scientist Specialist with the Kentucky State Police, and were determined to contain controlled substances, including marijuana (Gov't Ex. 3), heroin (Gov't Ex. 2.1; Gov't Ex. 2.2; Gov't Ex. 4.1), cocaine base (Gov't Ex. 4.2A; Gov't Ex. 4.2B), and cocaine (Gov't Ex. 5). *See* (Gov't Ex. 12). Each substance therefore meets the statutory definition of a controlled substance for purposes of 21 U.S.C. § 841(a)(1).

These substances were in Defendant's possession on December 28, 2016, and

---

[3] Furthermore, the spray can of smoke-eliminating air sanitizer shows Defendant knew he was smoking marijuana and was attempting to mask the odor.

he knew that they were in his possession. The Court rejects Defendant's theory that the possession was not knowing because another individual, such as a passenger or a friend borrowing Defendant's vehicle, could have placed the controlled substances in the vehicle without his knowledge. Not only did the body-camera footage capture Defendant voicing concern to Officer Shepard about what the officers would find during the search, but bags similar in size and packaging to the ones seized from the vehicle were also seized from Defendant's person and inside his underwear. Indeed, the Court cannot contemplate a more immediate—or intimate—method of possession than that chosen by Defendant and revealed to Officer Shepard on his way to the jail.

The Court also rejects Defendant's theory that the items seized during the search were altered during the course of the investigation. A complete chain of custody from Officer Shepard to the City of Covington Police Department's evidence laboratory has been established by testimony. Specifically, Susan Stadtlander of the Covington Police Department testified that the evidence was sealed when she removed it from the evidence envelopes to conduct her analysis. There is simply no evidence that any individual had an opportunity or incentive to tamper with the evidence presented. Defense counsel pointed to irrelevant discrepancies that, in light of the totality of the circumstances, have no probative value. Susan Vanlandingham testified that the net weight of a specimen is not re-weighed after it is tested, which explains why the same net weight is consistently listed in her reports following her analysis. *See* (Gov't Ex. 12). Based upon the evidence presented, the Government has satisfied its burden to demonstrate that Defendant knowingly possessed a mixture or substance containing a quantity of heroin, as well as a mixture or substance containing a quantity of cocaine.

Finally, the United States has proven beyond a reasonable doubt that Defendant possessed these substances with the intent to distribute some amount of it, as alleged in Counts One and Two of the Indictment.[4] The Court may rely upon circumstantial evidence, and may find the intent to distribute controlled substances from the large quantity involved. *Wettstain*, 618 F.3d at 586; *see also United States v. Vincent*, 20 F.3d 229 (6th Cir. 1994) (intent to distribute may be inferred from quantity, value, and purity of the drugs, as well as other evidence which would support the inference that the drugs were not intended for personal use).

Here, a number of factors indicate that Defendant intended to distribute the heroin and cocaine found in his vehicle and on his person on December 28, 2016. First, the amounts found in Defendant's possession denote bulk, distribution-level quantities. The packaging was also consistent with distribution. Defendant did not aggregate all his substances on hand for ease of use, but rather packaged out different amounts into separate bags, making it easier to disperse. Furthermore, during their search of the vehicle, the officers did not find any crack pipes, syringes, needles, filter material, or other paraphernalia that would suggest personal usage. While no scales were found, the absence of this one item under the totality of the circumstances, including the fact that Defendant was in a moving vehicle, is insufficient on its own to overcome the evidence that the controlled substances in Defendant's possession were not for mere personal use. The *number* of cellular phones on hand, as well as the bag of ammunition, and relatively

---

[4] In reaching this conclusion, the Court rejects the evidence of text-message communications obtained through the execution of the cellular phone search warrants. Based upon the age of the text messages, the Court finds that they have little probative value. Nonetheless, even without this evidence the Court is satisfied that the Government has met its burden of demonstrating Defendant's intent to distribute beyond a reasonable doubt.

large amount of currency, are also indicia of drug trafficking incongruous with mere use and constitute factors in support of a finding that Defendant possessed the controlled substances with the intent to distribute. *See United States v. Taylor*, 471 F. App'x 499, 516 (6th Cir. 2012).

Moreover, the number of controlled substances in play is significant. Multiple drugs are not consistent with personal use, but rather bulk transactions, and Defendant possessed bulk amounts of heroin, cocaine, and cocaine base. When talking with law-enforcement officers, Defendant also indicated that he was attempting to obtain methamphetamine from another supplier. Likewise, Defendant's own words to Officer Shepard and Detective Jansen offer information about large-scale sources of supply, where he purported to exchange controlled substances for significant amounts of money, ranging from $7,000.00 to $20,000.00. The size of these transactions also signal distribution, not mere use.

Finally, when examining Defendant's intent, the Court may draw inferences from his criminal history. Evidence concerning a defendant's "crime, wrong, or other act" is admissible to prove a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In deciding whether to admit evidence under Rule 404(b), courts conduct a three-pronged inquiry:

> First, the trial court must make a preliminary determination as to whether sufficient evidence exists that the prior act occurred. Second, the district court must make a determination as to whether the "other act" is admissible for a proper purpose under Rule 404(b). Third, the district court must determine whether the "other acts" evidence is more prejudicial than probative under Rule 403.

*United States v. Brewer*, No. 3:17-CR-37-DJH, 2018 WL 773137, at *2 (W.D. Ky. Feb. 7, 2018) (citing *United States v. Rios*, 830 F.3d 403, 426 (6th Cir. 2016)).

Here, Defendant's 2011 conviction for possession of cocaine and heroin in a vehicle constitutes appropriate 404(b) evidence of other acts under the three-step analysis. First, there is no dispute that Defendant committed the offenses in question, and the United States has provided documentation of those convictions. *See* (Gov't Ex. 13). Second, the evidence is offered to prove intent, knowledge, and absence of mistake—all admissible purposes under Rule 404(b). And Defendant's intent (or absence of mistake) is in issue, as the drug-trafficking offenses alleged in this case require specific intent. Third, the danger of undue prejudice is not present in this case because it was tried to the Court rather than to a jury. *See United States v. Labona*, 689 F. App'x 835, 839 (6th Cir. 2017) ("[C]ourts worry less about prejudicial effects in bench trials"); *United States v. Hall*, 202 F.3d 270 (6th Cir. 2000) (per curiam) ("In bench trials, the application of the unfair prejudice portion of Rule 403 has been seen as an unnecessary and useless procedure.") (internal citations omitted). Defendant's 2011 conviction presents strikingly similar circumstances, involving possession of cocaine and heroin inside a vehicle. Notably, the 2011 conviction involved even lesser amounts of controlled substances than that found in the subject 2016 search, which is relevant to show a reasonable inference that the greater amounts found in the 2016 search were intended for trafficking.

In sum, and in light of the totality of the circumstances, the United States has demonstrated beyond a reasonable doubt that on December 28, 2016, Defendant Conway knowingly and intentionally possessed a mixture or substance containing a quantity of heroin, a Schedule I controlled substance, and a mixture or substance

containing a quantity of cocaine, a Schedule II controlled substance, with the intent to distribute some amount of it, all in violation of 21 U.S.C. § 841(a)(1).

V. **VERDICT**

For the reasons set forth herein, the Court finds Defendant Donald R. Conway **GUILTY** of Count One and Count Two of the Indictment (Doc. # 1).

This 27th day of August, 2018.



L:\DATA\ORDERS\Cov17\17-43 FOF and COL and Verdict.docx